898 F.2d 1041
 MUSGROVE, Sylvia Carpenter, et al., Plaintiff,
v.
The SOUTHLAND CORP., et al., Defendants.
CITGO PETROLEUM CORP., a wholly owned subsidiary of the
Southland Corporation, Defendant-Third-Party
Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INS. CO. & International Ins. Co.,
Third-Party-Defendants-Appellees.
MUSGROVE, Wanda Sue Parton, Plaintiff,
v.
The SOUTHLAND CORP., et al., Defendants.
CITGO PETROLEUM CORP., a wholly owned subsidiary of The
Southland Corporation, Defendant Third-Party
Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INS. CO. & International Ins. Co.,
Third-Party-Defendants-Appellees.
ABSHIRE, Jennie L., et al., Plaintiff,
v.
The SOUTHLAND CORP., et al., Defendants.
CITGO PETROLEUM CORP., a wholly owned subsidiary of The
Southland Corporation, Defendant-Third-Party
Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INS. CO. & International Ins. Co.,
Third-Party-Defendants-Appellees.
 No. 89-4351.
 United States Court of Appeals,
Fifth Circuit.
 April 25, 1990.
 
 James E. Williams, Woodley, Williams, Fenet, Palmer, Doyle & Norman, Lake Charles, La., for Citgo.
 David R. Lestage, Hall, Lestage & Landreneau, DeRidder, La., for St. Paul Fire & Marine.
 W. Shelby McKenzie, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., Ward Lafleur, Preis, Kraft, Laborde & Daigle, Lafayette, La., for Intern. Ins. Co.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before THORNBERRY, POLITZ, and JOLLY, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 This appeal requires the determination of ultimate liability for two deaths occurring in the workplace on a Louisiana jobsite for which Citgo Petroleum Corporation paid death benefits. Citgo now appeals adverse summary judgment of its claim for reimbursement from the insurers of its contractor. We affirm.Background
 
 
 2
 Two employees of Lake Charles Electric Co. (LCE) were killed while performing electrical maintenance work at a Citgo refinery pursuant to a purchase order contract between Citgo and LCE. Although the cable on which the decedents were working was de-energized, a live cable in the vicinity arced, causing a disastrous fire.
 
 
 3
 The survivors of the decedents sued Citgo, LCE, and others. After settling the survivors' claims Citgo filed third-party complaints against LCE and its insurers, St. Paul Insurance Company and International Insurance Company, seeking recovery of the amounts it had paid.
 
 
 4
 At the time of the accident LCE had a comprehensive general liability policy with St. Paul which provided coverage of $1 million per occurrence. LCE also had an excess liability policy with International. Despite contract obligations requiring it to do so, LCE failed to name Citgo as an additional insured under either policy until after the fatal accident. On cross-motions for summary judgment the district court entered judgment for Citgo against LCE, finding that LCE had breached its contractual obligation to name Citgo as an additional insured, but dismissed Citgo's claims against St. Paul and International. Citgo timely appealed.
 
 Analysis
 
 5
 Citgo's appeal requires the interpretation of its contract with LCE and LCE's insurance contracts with St. Paul and International. We review these matters de novo. Truehart v. Blandon, 884 F.2d 223 (5th Cir.1989).
 
 1. Coverage under the International policy
 
 6
 Citgo maintains that immediately upon the execution of its contract with LCE it automatically became an insured under the International policy. It further maintains that the threshold of the International excess liability policy "drops down" to cover losses under $1 million in the event that the primary policy issued by St. Paul provides no coverage. We agree with the district court and hold that Citgo was not an insured under the International policy.
 
 
 7
 Citgo bases its argument on the definition of "insured" in the International policy, which includes "any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy...." Citgo's purchase order contract with LCE obligated LCE to provide comprehensive general liability insurance of not less than $1 million per occurrence for itself and Citgo. Because the International policy covers only those losses in excess of $1 million, that policy does not afford the coverage which LCE's contract with Citgo required.
 
 
 8
 Citgo argues, however, that its contractor's manual, incorporated in the purchase order contract by reference, obligated LCE to provide Citgo with the coverage afforded by the International policy. The pertinent manual sections provide:
 
 
 9
 2.2.1. All insurance coverages carried by Contractor, whether or not required hereby, ... shall extend to and protect Company ... to the full amount of such coverage, but not less than the following shall be provided:
 
 
 10
 . . . . .
 
 
 11
 c. Comprehensive General Liability insurance ... not less than $1,000,000 per occurrence.
 
 
 12
 . . . . .
 
 
 13
 2.2.5. ADDITIONAL NAMED INSURED--Contractor shall cause the insurance company to name Company as an additional insured on all of the above insurance....
 
 
 14
 (emphasis added). According to Citgo, under this provision LCE's voluntary decision to obtain excess liability coverage for itself triggered an obligation to obtain the same coverage for Citgo. We do not accept that construction.
 
 
 15
 The purchase order contract defines limits the comprehensive general liability coverage which LCE is required to obtain for itself and Citgo to be at least $1 million per occurrence. According to the manual the contract prevails in any conflict. Thus, any effort to use manual section 2.2.1 to increase the coverage required of LCE above the level required by the contract is without force. Alternatively, the manual can be construed to avoid conflict by reading section 2.2.1 to provide that LCE's voluntary decision to obtain additional coverage for itself includes the prerogative of obtaining additional coverage for Citgo. The decision to obtain the additional coverage, however, remains voluntary. Either way, LCE was not contractually obligated to obtain excess liability coverage for Citgo. Gulf Oil Corp. v. Mobile Drilling Barge or Vessel, 441 F.Supp. 1 (E.D.La.1975), aff'd, 565 F.2d 958 (5th Cir.1978), on which Citgo relies, is inapposite. In Gulf Oil, it was undisputed that the contractor was required to obtain the subject insurance policy.
 
 2. Breach of contract coverage
 
 16
 The district court found that LCE was required by contract to name Citgo as an additional insured on its primary insurance policy with St. Paul but had failed to do so prior to the accident. Citgo contends that the St. Paul policy afforded coverage for this contractual breach through an endorsement providing blanket contractual coverage.[1]
 
 
 17
 The St. Paul policy was obtained through a Louisiana broker by a Louisiana corporation insuring a risk located in Louisiana. Hence the law of Louisiana governs our construction of the St. Paul policy. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas, Inc., 846 F.2d 319 (5th Cir.1988). Citgo's claim founders at the threshold under Louisiana law, which bars claims against insurers by non-insured parties. Lopez v. Hartford Accident & Indemnity Co., 495 So.2d 375 (La.App.), cert. denied, 498 So.2d 757 and 498 So.2d 758 (1986); Ordonez v. W.T. Grant Co., 297 So.2d 780 (La.App.1974). The premise of Citgo's claim is that LCE failed to procure insurance to protect Citgo. Citgo's sole claim is against LCE.
 
 
 18
 Regardless, the claim lacks merit. Contractual liability coverage has a definite meaning. It is coverage of the insured's contractual assumption of the liability of another party. It typically is in the form of an indemnity agreement. Ordonez; W. McKenzie & H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice Sec. 189 (1986); see also Piper v. Central Louisiana Electric Co., Inc., 446 So.2d 939 (La.App.1984), later proceeding, 542 So.2d 7 (La.App.), writ denied, 544 So.2d 409 (1989); accord Dreis & Krump Mfg. Co. v. Phoenix Insurance Co., 548 F.2d 681 (7th Cir.1977); Office Structures, Inc. v. Home Insurance Co., 503 A.2d 193 (Del.1985). The assumption by contract of the liability of another is distinct conceptually from the breach of one's contract with another. McKenzie and Johnson. Liability on the part of the insured for the former is triggered by contractual performance; for the latter liability is triggered by contractual breach. Olympic, Inc. v. Providence Washington Insurance Co. of Alaska, 648 P.2d 1008 (Alaska 1982). Citgo concedes that LCE made no indemnification agreement applicable to the loss herein; rather, it complains of LCE's breach of contract. LCE's contractual liability insurance is thus not applicable. LCE did not insure its commitment to secure insurance coverage for Citgo. The St. Paul policy affords Citgo no relief. Cf. Reliance Insurance Co. v. Gary C. Wyatt, Inc., 540 So.2d 688 (Ala.1988).
 
 
 19
 Citgo relies on cases finding coverage for the breach of warranty of workmanlike performance. Those cases provide no succor. In both Merrick Construction Co. v. Hartford Fire Insurance Co., 449 So.2d 85 (La.App.), cert. denied, 450 So.2d 958 (La.1984), and Brummerloh v. Firemen's Insurance Co. of Newark, 377 So.2d 1301 (La.App.1979), the warranties were supported by agreements to hold the other party harmless for the contractor's negligent performance. The loss at issue herein, by contrast, is covered by neither a warranty nor indemnification agreement.
 
 
 20
 Equally unavailing is Citgo's attempt to construe the term "blanket contractual coverage" in the St. Paul policy to include all contract damages. We find no basis for such an expansive construction. The blanket contractual coverage in the St. Paul policy entitled LCE to recover losses for liability assumed, but not for liability incurred by virtue of its contractual breach.
 
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Citgo makes this same argument with respect to the International policy. Because of our finding that LCE was not required to provide excess liability coverage for Citgo, LCE did not breach its contract by failing to do so. We do not reach the question whether the International policy covered contract breaches