**JAKOBSON SHIPYARD, INC.,**
**Plaintiff–Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY and the Aetna Life & Casualty Company, Defendants–Appellees.**

**No. 1299, Docket 91–9284.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1992.
Decided April 13, 1992.

Herbert M. Lord, Burlingham Underwood & Lord, New York City, for plaintiff-appellant.

John R. O'Connor, Garden City, N.Y. (Robin Mary Heaney, O'Connor, O'Connor, Hintz & Deveney, of counsel), for defendants-appellees.

Before FEINBERG, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Jakobson Shipyard, Inc. ("Jakobson") appeals from Judge Kram's grant of summary judgment. 775 F.Supp. 606. Jakobson sought through this declaratory judgment action indemnification and attorneys' fees from Aetna Casualty and Surety Company and Aetna Life & Casualty Company ("Aetna") for an action for breach of warranty brought against Jakobson by Express Barge, Inc. ("Express"). Aetna had insured Jakobson, a shipbuilder and repairer, through two separate Comprehensive General Liability ("CGL") policies that included a Broad Form Comprehensive General Liability Endorsement. The first CGL policy was effective from January 1, 1984 through January 1, 1985, the second from January 1, 1985 through January 1, 1986.

Express had purchased two tug boats from Jakobson in 1983, and in October 1984 found the steering mechanism of one tug to be defective. Express filed suit on August 21, 1986, citing "defective, incompetent workmanship" and the failure to perform according to specifications. Express alleged the defective steering apparatus on both tugs rendered them inoperable and sought damages to cover the costs of their temporary and permanent repairs. After a jury verdict for Express, the case was settled for $775,000.

The district court granted Aetna's motion for summary judgment on the grounds that Jakobson's liability and costs of defense did not result from an "occurrence" under the terms of the policy and also that liability for breach of warranty was expressly excluded under the plain terms of the policy. We affirm on the grounds that the tugs' defective steering mechanisms were not an "occurrence" under the terms of the policy.

We reiterate the familiar standard that we may affirm the entry of summary judgment only where the pleadings, depositions and affidavits demonstrate that there exists "no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We of course resolve all ambiguities in favor of the non-moving party. *Rosen v.*

*Thornburgh,* 928 F.2d 528, 533 (2d Cir. 1991).

■ Under New York law, which applies in this diversity action, an insurer's obligation to indemnify an insured must be based on the insurance agreement. *See Smith v. Hooker Chemical and Plastics Corp.,* 83 A.D.2d 199, 443 N.Y.S.2d 922, 924 (1981). We may not frustrate the intentions of the parties by altering the contract's terms or by reading into the contract meanings not contemplated by the parties. Instead, we give the words of the agreement their ordinary and plain meaning. *See In re Ambassador Group, Inc. Litigation,* 738 F.Supp. 57, 62 (E.D.N.Y. 1990).

■ Once an insured has come forward with evidence of a loss covered by the insurance policy, the burden shifts to the insurer to show that the loss is excluded from coverage. *McCormick & Co. v. Empire Ins. Group,* 878 F.2d 27, 30 (2d Cir. 1989). Each of the CGL policies issued by Aetna to Jakobson states in its first paragraph:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> bodily injury or property damage
>
> to which this insurance applies, caused by an *occurrence....*

"Occurrence" is defined by the policies as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

■ Express's action against Jakobson was for breach of contract and breach of warranty regarding the tugs' defective steering mechanisms. The complaint alleged that Jakobson's work product did not perform according to contract specifications due to Jakobson's failure to manufacture the steering mechanisms in a workmanlike manner. The damages sought were for damages to the tugs themselves resulting from the defective steering mechanisms. No damage to the property or persons of third parties was alleged or proven.

Although we construe ambiguities in an insurance policy in favor of the insured, *see Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978), there is no pertinent ambiguity in the policies' definition of "occurrence." Were we to construe the words "accident" or "continuous or repeated exposure to conditions" as encompassing damage to a product resulting from the product's failure to perform according to contract specifications, we would expand the agreed-upon coverage. An accident, given its dictionary meaning, is "an event or condition occurring by chance or arising from unknown or remote causes." *Webster's Third New International Dictionary* 11 (1981). We might add that in common parlance an external force of some kind is usually involved. However, the faulty steering on the tugboats sold to Express was the result of faulty workmanship that did not comply with the specifications of the contract and Express's action sounded in contract. There was no chance occurrence, no unknown or remote cause, and no unexpected external force.

Nor is a conclusion that the damages sustained by the tugs due to their steering malfunctions resulted from "continuous or repeated exposure to conditions" sustainable. As the district court stated, the phrase refers to "the repeated action of external forces resulting in damage." Express did not claim that outside forces caused the tugs' steering to fail.

Jakobson's reliance on *Aetna Casualty & Surety Co. v. General Time Corp.,* 704 F.2d 80, 83 (2d Cir.1983), is misplaced. That case involved a breach of warranty claim against the insured for motors it sold to Flair Manufacturing Company. The motors were used by Flair as component parts in radiators that it manufactured. When the motors malfunctioned, Flair sued General Time for breach of warranty and eventually settled the case for $1,180,000. General Time was insured by Aetna under both a CGL policy and an umbrella policy. When Aetna sued to recover its contribu-

tion to the settlement, the district court found that the damage caused by General Time's breach of warranty constituted an "occurrence" because the defective motors caused damage to other property of Flair that had not been purchased from General Time. The motors were thus an external force with regard to the radiators. The faulty steering mechanisms in the instant case did not damage property other than the tugs purchased from Jakobson under the contractual arrangements in question.

Jakobson also argues that the symbol "K" appearing on the policy's first page constituted a contractual liability endorsement covering the risk for which it now claims coverage. However, the plain language of the policy on the same page indicated that an "X" in the appropriate box was required for the contractual liability endorsement, and there was none. Given our disposition of the appeal, we need not consider the other arguments raised by the parties.

Affirmed.