**GIBSON & ASSOCIATES, INC., Plaintiff,**

v.

**HOME INSURANCE COMPANY, Defendant.**

**Civil Action No. 3:96–CV–1725–P.**

United States District Court,
N.D. Texas,
Dallas Division.

March 11, 1997.

W. Kyle Gooch, Canterbury Stuber Pratt Elder & Gooch, Dallas, TX, for Gibson & Associates.

Judith A. Schening, Fulbright & Jaworski, Dallas, TX, for Home Indem. Co., Home Ins. Co.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before this Court are the following:

1. Plaintiff's Motion for Partial Summary Judgment and supporting Memorandum of Law, filed August 8, 1996;

2. Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Defendant's Counter–Motion for Summary Judgment, filed August 28, 1996, and Brief in Support, filed on the same date;

3. Response of Gibson & Associates, Inc. to Defendant's Motion for Summary Judgment, filed September 4, 1996;

4. Plaintiff's Reply Brief, filed September 4, 1996; and

5. Defendant's Reply to Plaintiff's Response to Defendant's Counter–Motion for Partial Summary Judgment, filed September 18, 1996.

Upon thorough review of the summary judgment evidence, the parties' arguments, and relevant law, this Court finds that for the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment should be granted and that Defendant's counter-motion should be denied.

## BACKGROUND

This is a coverage dispute involving a commercial general liability policy (the "Policy") provided by Defendant, Home Insurance Company ("Home"), to Plaintiff, Gibson & Associates, Inc. ("Gibson"). Gibson contends that, pursuant to the Policy, Home was under a contractual duty to defend it in a lawsuit brought against Gibson by the City of Dallas (the "City"). Home, by contrast, denies that the claims asserted by the City fell within the scope of coverage of the Policy and asserts that it consequently never became subject to any obligation to afford Gibson a defense against the City's action.

The underlying lawsuit arose out of a construction contract awarded to Gibson by the City of Dallas in October 1992, according to which Gibson was to perform street, sidewalk, and public underground utility upgrades along Main Street between Griffin and Ervay Streets in downtown Dallas. Several store owners and tenants along Main Street (the "Shop Owners") brought two separate actions against the City of Dallas, claiming that, "[d]ue to poor or inadequate planning," the City had failed adequately to assess the scope of necessary construction, in particular the total closing of Main Street in

late 1992 or early 1993.[1] Both the closing of Main Street and the ongoing construction activities, the plaintiffs claimed, created significant interference with access to their leasehold or property interests and caused the plaintiffs serious financial damage, including in some instances the loss of their leases. The plaintiffs asserted, *inter alia*, that the City's actions constituted a taking without compensation in violation of the constitutions of the United States and the State of Texas and that the City's restriction of access to the plaintiffs' properties "was illegal, unnecessary, negligently performed and/or unduly delayed."

The City responded to these lawsuits in part by filing third-party complaints against Gibson in which it alleged that Gibson had agreed to indemnify the City "from and against any and all claims, lawsuits or any other harm for which recovery or damages is sought, that arise out of a breach of any term of the contract" between Gibson and the City. Gibson had breached its contractual duties, the City contended, because the construction contract required Gibson to insure that continued access to businesses along Main Street would be maintained during business hours. Attached as an exhibit to the City's third-party complaint in each case was a copy of the shopkeepers' underlying pleading.

Gibson forwarded both third-party actions to its liability carrier. By correspondence of April 6 and May 16, 1995, Home declined to assume Gibson's defense in these matters on the ground that the claims were not covered under the applicable liability insurance policy. Gibson thereupon retained personal counsel, and on April 15, 1996, the City's claims against Gibson were dismissed with prejudice pursuant to the parties' stipulation of dismissal. On May 23, 1996 Gibson filed the present action against Home in state court, seeking to recover the costs of its defense in the underlying lawsuit.[2] Gibson contends that under the commercial general liability policy effective at the time of the relevant events in this matter, Home had a

duty to defend Plaintiff against the City's claims and that in refusing to provide Plaintiff with a defense, Home failed to deal with Plaintiff fairly and in good faith. The parties now have filed cross-motions for partial summary judgment on the issue whether Home was under a duty to defend Gibson against the City's allegations.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party must identify the evidence on file in the case which establishes the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

Once the moving party has made an initial showing, the party opposing the motion must offer evidence sufficient to establish the existence of essential elements of the party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment; the party defending against a motion for summary judgment cannot defeat the motion unless it provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in its favor. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the

---

1. The Shop Owners' actions, both of which were pending in the United States District Court for the Northern District of Texas, Dallas Division, were eventually consolidated.

2. The case was subsequently removed to this Court.

motion for summary judgement are likewise insufficient to defeat a proper motion for summary judgment. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

All evidence and the inferences to be drawn therefrom "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Marshall v. Victoria Transp. Co.,* 603 F.2d 1122, 1123 (5th Cir.1979). However, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## ANALYSIS

### A. GENERAL CONSIDERATIONS

Home's argument that it was never under a duty to defend Gibson against the City's third-party action is predicated on the presumption that the City's claims are essentially contractual in nature and hence do not fall within the scope of coverage provided by Home's commercial general liability insurance policy. Because the Court is of the opinion that, notwithstanding its inapplicability to causes of action for breach of contract, the Policy does provide coverage for indemnification claims of the type asserted by the City, Home's motion for summary judgment must be denied, and partial summary judgment must instead be granted in favor of Gibson.

### 1. *The Duty to Defend*

Under Texas law, the duty to defend is significantly broader in scope than the duty to indemnify, and a breach of the former gives rise to a distinct and separate cause of action than does a breach of the latter. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993); *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex.App.—Dallas 1987, no writ). In determining whether the facts of any given case obligate the carrier to provide a defense to its insured, Texas courts follow the "eight corners" rule, which requires the court to look strictly to the allegations in the pleadings and the language of the policy. *State Farm Lloyds v. Kessler,* 932 S.W.2d 732, 736 (Tex.App.—Fort Worth 1996, writ requested); *American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153 (Tex.App.—Dallas 1990, writ dism'd w.o.j.). If the underlying lawsuit alleges facts that are within the scope of coverage, the insurer ordinarily is held to owe the insured a duty to defend. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 140 (1997); *American Physicians Ins. Exchange v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994).

Neither the truth or falsity of the allegations nor any other factors outside the pleadings may be taken into consideration: "The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Pro–Tech Coatings, Inc. v. Union Standard Ins. Co.,* 897 S.W.2d 885, 887 (Tex.App.—Dallas 1995) (quoting *American Alliance,* 788 S.W.2d at 153–54); *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). As long as the plaintiff has potentially asserted a claim that lies within the coverage of the policy, the insurance carrier is under an obligation to defend the insured. *Gulf States Ins. Co. v. Alamo Carriage Serv.,* 22 F.3d 88, 90 (5th Cir.1994); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965). Any doubt as to whether the allegations of the complaint state a claim within the coverage provisions of the policy must be resolved in the insured's favor. *Merchants,* 939 S.W.2d at 140.

The rules of construction governing the interpretation of contracts generally also apply to the interpretation of insurance policies. *Gulf Chem.,* 1 F.3d at 369 (citing *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977)). Accordingly, the words used in an unambiguous insurance policy "are given their ordinary meaning unless the policy clearly gives them a different meaning." *Kessler,* 932 S.W.2d at 736. Ambiguities must be resolved by construing the policy "strictly against the insurer and liberally

in favor of the insured." *Gulf Chem.*, 1 F.3d at 369 (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987)). The burden of proving that allegations are excluded from coverage under the policy, moreover, rests on the insurer. *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] ) (citing *Evans v. General Ins. Co.*, 390 S.W.2d 818, 821–22 (Tex.App.—Dallas 1965, no writ)), *writ denied*, 864 S.W.2d 491 (Tex.1993), *cert. denied*, 511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994); *see also Maupin*, 500 S.W.2d at 635.

### 2. *Policy Coverage Provisions*

According to the coverage provisions set forth in the Policy in effect between Home and Gibson at the time of the events in question, Home agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Pl.'s Ex. H, § I.1.a. "Property damage" is defined as either "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." With respect to the latter, "[a]ll such loss shall be deemed to occur at the time of the 'occurrence' that caused it." *Id.* § V.12. The Policy, furthermore, provides insurance only for bodily injury or property damage that is caused by an "occurrence." *Id.* § I.1.b.(1). Under the definition provided by the Policy, the term "occurrence" refers to "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* § V.9.

Home submits that none of the claims asserted by the City against Gibson encompass either "property damage" or an "occurrence" as defined in the Policy. Even if the Court were to find that the City's complaints could be read to allege property damage caused by a covered occurrence, moreover, Home contends that at least two policy exclusions effectively exempt the claims from coverage. Consequently, Home reasons, it was under no duty to defend Gibson in the underlying action. The Court now addresses each of Defendant's arguments in turn.

### B. THE CITY'S BREACH OF CONTRACT CLAIM

■ Home contends that the only damages which the City sought to recover from Gibson were the economic losses it might sustain as a result of an adverse judgment in the Shop Owners' action against it. Such economic loss, however, does not constitute "property damage" as defined by the Policy; because the allegations of the City's complaints thus did not state a claim that might potentially fall within the scope of coverage, Home concludes, a duty to defend did not exist.

### 1. *Property Damage*

The Court agrees that any damages sought by the City as a direct consequence of Gibson's breach of its construction contract cannot be characterized as "property damage." Significantly, in determining the nature of damages for which recovery is sought from Gibson, the Court must look not, as Gibson insists, to the claims brought by the Shop Owners against the City of Dallas, but rather to the facts asserted in the City's own third-party actions against Gibson. In other words, it is the factual background alleged in the third-party complaints that provides the pertinent frame of reference with regard to the issue of coverage. It is true, as Gibson correctly points out, that the City's complaints incorporate the Shop Owners' pleading by reference. Yet, the mere fact of incorporation neither demonstrates that the City has thereby adopted the Shop Owners' causes of action as part and parcel of its own claims against Gibson, nor does it indicate that the City is seeking recovery on a theory of negligence for injuries sustained directly by the Shop Owners. Quite to the contrary, the only damages claimed by the City derive from its potential liability to the Shop Owners as a result of Gibson's alleged breach of the construction contract.

■ In its prayer, the City requests judgment against Gibson "for all sums that may be adjudged against defendant City of Dallas in favor of [the Shop Owners]." Such a potential judgment against the City represents neither physical injury to tangible

property nor loss of use of tangible property that is not physically injured; rather, it constitutes purely economic loss. Texas law, however, does not recognize economic damages as coming within the definition of "property damages" contained in standard liability insurance policies. *Kessler*, 932 S.W.2d at 737 (citing *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 272 (Tex.App.—Dallas 1992, writ denied)); *see also Nutmeg Ins. Co. v. Pro–Line Corp.*, 836 F.Supp. 385, 388–89 (N.D.Tex.1993) (finding that, pursuant to the interpretation of general liability policies employed by Texas courts, lost product sales, like lost investments and profits, do not constitute "property damage"). As the City's breach of contract claim involves only economic loss and not property damage, it does not subject Home to any obligation to provide a defense to its insured.

### 2. *Occurrence*

■ For yet another reason, the pending breach of contract claim against Gibson cannot support Plaintiff's cause of action for breach of the duty to defend. Home accurately points out that, while Texas courts apparently have never ruled on this issue, the great majority of jurisdictions seem to agree that a breach of contract does not represent an "occurrence" within the meaning of that term as defined by commercial general liability policies. As the Wyoming Supreme Court observed more than a decade ago, "[c]ourts universally have interpreted liability-coverage provisions, identical to that found in [the quoted policy], as referring to liability sounding in tort, not in contract." *Action Ads, Inc. v. Great Am. Ins. Co.*, 685 P.2d 42, 43–44 (Wyo.1984).

■ Accordingly, courts have denied coverage in cases where the only damage alleged was the failure of a product to perform in accordance with contract specifications because such damage is not encompassed by the policy's definition of "occurrence." *See Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 961 F.2d 387, 389 (2d Cir.1992) (applying New York law). Other cases, furthermore, have held more generally that coverage simply does not exist when an insured becomes obligated to pay damages incurred by a third party because of the insured's own breach of contract. *See, e.g., Pace Constr. Co. v. United States Fidelity & Guar. Ins. Co.*, 934 F.2d 177, 179–80 (8th Cir.1991) (applying Missouri law); *Aetna Cas. & Sur. Co. v. Spancrete of Illinois, Inc.*, 726 F.Supp. 204, 206–07 (N.D.Ill.1989) (applying Illinois law). Nor do contractual liability coverage provisions bring breach-of-contract claims within the scope of coverage, for " '[c]ontractual liability coverage' does not cover claims for breach of contract, but only covers tort liabilities of third parties that the insured has assumed by contract with the third party." *In re Liquidation of Excalibur Ins. Co.*, 519 N.W.2d 494, 497 (Minn.Ct.App.1994) (denying coverage for breach of contract claim); *see also Musgrove v. Southland Corp.*, 898 F.2d 1041, 1044 (5th Cir.1990) (applying Louisiana law).

In light of the fact that jurisdictions which have considered the issue have uniformly held that general liability policies ordinarily do not encompass coverage for damages arising from the insured's breach of contract, the Court is of the opinion that Texas courts would apply the same standard. Home, therefore, was under no duty to defend Gibson against the City's contract claim.

### 3. *Policy Exclusions*

■ Finally, the Court agrees with Home that, even if Texas courts were to find that commercial general liability insurance generally covers liability arising from contractual duties, the City's breach of contract claim in this case would nevertheless be excluded from the Policy by virtue of the express provisions of exclusion (m), exempting from coverage " 'property damage' to 'impaired property' or property that has not been physically injured, arising out of ... [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." In its action against Gibson, the City seeks damages for Gibson's breach of its agreement to conduct construction activities in such a manner as not to impede access to businesses

along Main Street during business hours. In other words, the complaint alleges that the City was harmed as a consequence of property damage due to Gibson's "failure ... to perform a contract in accordance with its terms" and thus appears to be solidly encompassed within the ambit of exclusion (m). Courts in other jurisdictions have found this exclusion to remove from coverage claims arising at bottom solely from a breach of contractual duties. Thus, the Fifth Circuit has held that, under Louisiana law, claims for breach of a duty arising from contract, unlike claims sounding in tort, are excluded from coverage by exclusion (m). *Alert Centre, Inc. v. Alarm Protection Servs., Inc.,* 967 F.2d 161, 164–65 (5th Cir.1992). Similarly, an Oregon court of appeals has concluded that property damage caused by inadequately performed window assemblies "comes squarely within exclusion (m)." *Milgard Mfg., Inc. v. Continental Ins. Co.,* 92 Or.App. 609, 759 P.2d 1111, 1112 (1988); *see also American Int'l Surplus Lines Ins. Co. v. IES Lead Paint Division, Inc.,* No. 94–4627, 1996 WL 135334, at *4–5 (E.D.Pa.1996) (finding property damage occasioned by "defective and inadequate work" to fall within the scope of exclusion (m)).

▪ Gibson argues, however, that exclusion (m) is ambiguous, and that its language should be construed more narrowly to exclude from coverage only property damage caused by a delay in performance. More specifically, Gibson maintains that the phrase "failure to perform" must be understood as little more than the equivalent of "delay," because under the doctrine of *ejusdem generis,* general words that follow specific words must be considered to be of same type as the specific words. For several reasons, Gibson's argument is unconvincing. First, the Court can find no ambiguity in the phrase "delay or failure ... to perform a contract or agreement in accordance with its terms" that would necessitate resort to rules of contract construction.[3] *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, (Tex.1987) (noting that,

if contract language is plain and unambiguous, the court may not employ rules of construction). But even if the relevant language of exclusion (m) could be found to be susceptible to more than one reasonable interpretation, *ejusdem generis* does not supply an appropriate basis for resolving the ambiguity. The Texas Supreme Court has described the doctrine as follows:

> Where specific and particular enumerations of persons or things ... are followed by general words, the general words are not to be construed in their widest meaning or extent but are to be treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned.

*Id.* (quoting *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 272 (1944)).

Insofar as Gibson seeks to characterize the phrase "delay or failure ... to perform" as consisting of an enumeration of persons or things, its interpretation is clearly in error, as is its contention that a "failure to perform" may be regarded as an event that is somehow of a more general nature than a mere "delay." A failure to perform in accordance with contract terms constitutes by no means the same eventuality as a delay in performance but, quite to the contrary, represents an alternative event that may trigger the operation of exclusion (m). The Court, then, concludes that the City's breach of contract action against Gibson was not covered by the liability insurance policy provided Gibson by Home, and that this claim, accordingly, could not give rise to a duty to defend.

## C. THE CITY'S CAUSE OF ACTION FOR INDEMNITY

### 1. *Contractual Liability Coverage*

▪ The Court's determination that the breach of contract claim put forth by the City does not fall within the coverage provided by the Policy does not, however, conclude the

---

**3.** Gibson's claim that exclusion (m) is ambiguous relies primarily upon excerpts from a treatise. *See* Scott C. Turner, *Insurance Coverage of Construction Disputes* § 23.05 (1992). None of the ambiguities noted in the passage quoted from

that treatise, however, are pertinent to the issue before the Court here. Moreover, the relevant policy language in this case is not identical to that discussed in the treatise.

inquiry for, in addition to its cause of action for breach of contractual obligations, the City has also asserted a claim for indemnification. That claim is based on the City's allegation that Gibson "contracted and agreed to indemnify and save harmless the defendant, City of Dallas, from and against any and all claims, lawsuits or any other harm for which recovery of damages is sought, that arise out of a breach of any term of the contract by third party defendant." Having considered this allegation in the context of the Policy language, the Court concludes that it is sufficient to bring the City's claim potentially within the scope of coverage of the Policy. Consequently, Home was under a duty to assume Gibson's defense, since it is a basic principle that the insurer must defend any action, "despite theories of liability asserted against an insured which are not covered under the policy, if there are *any* theories of recovery that fall within the policy." *Western Fire Ins. Co. v. J.R. Snyder, Inc.*, 76 Mich.App. 242, 256 N.W.2d 451, 454 (1977) (emphasis added).

■ Commercial general liability insurance "does not normally cover indemnity obligations." *Shell Oil Co. v. National Union Fire Ins. Co.*, 44 Cal.App.4th 1633, 52 Cal. Rptr.2d 580, 585 (1996). The Policy in the case at bar, however, contains a provision that—though not entitled as such—effectively operates to grant contractual liability coverage with respect to certain types of claims. Contractual liability coverage ordinarily is intended to extend coverage to liabilities incurred as a consequence of indemnity agreements. *Id.; Alex Robertson Co. v. Imperial Cas. & Indem. Co.*, 8 Cal.App.4th 338, 10 Cal.Rptr.2d 165, 168 (1992). In this case, exclusion (b) of the Policy provides that

> This insurance does not apply to ... "[b]odily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property dam-

age" occurs subsequent to the execution of the contract or agreement; or

> (2) That the insured would have in the absence of the contract or agreement.

An "insured contract" is defined in part as follows:

> That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

By creating an exception from exclusion (b) for property damage for which the insured becomes obligated to pay due to an indemnification agreement assumed in an "insured contract," Home thus has expressly agreed to provide a limited range of contractual liability coverage.

■ Home argues, however, that since the indemnity agreement between Gibson and the City of Dallas is based in contract and commercial general liability insurance provides coverage only for tort-based liability, it had no duty under the Policy to defend Gibson on the indemnity claim. The Court finds that this reasoning misconstrues the nature of indemnity obligations: "The assumption by contract of the liability of another is distinct conceptually from the breach of one's contract with another. Liability on the part of the insured for the former is triggered by contractual performance; for the latter liability is triggered by contractual breach." *Musgrove*, 898 F.2d at 1044. Contractual liability coverage provisions are specifically designed to provide coverage for indemnification actions, notwithstanding the fact that the Policy may offer no coverage for breach of a contractual duty. *Id.; see also White Mountain Cable Constr. Co. v. Transamerica Ins. Co.*, 137 N.H. 478, 631 A.2d 907, 909–10 (1993) (holding that the insured had entered into an indemnity agreement and hence was entitled to a defense by the insurer); *Spancrete*, 726 F.Supp. at 207 (finding contractual liability coverage inapplicable since the third-party action was based upon breach of contract); *cf. Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 396–97

(5th Cir.1995) (discussing contractual liability coverage under Texas law). Since Home agreed to provide coverage for third-party tort liabilities assumed in an "insured contract," Gibson was entitled to a defense against the indemnity claim as long as that claim was otherwise covered by the Policy.

### 2. Property Damage

 Home next submits that the indemnity claim is nonetheless excluded from coverage because the Shop Owners' losses do not qualify as "property damage" under the Policy. In response, Gibson does not dispute that lost profits and other purely economic injuries normally do not comprise "property damage" as defined in commercial general liability policies. *See, e.g., American States Ins. Co. v. Crawley Constr., Inc.*, 779 F.Supp. 137, 138 (N.D.Cal.1991), *aff'd*, 5 F.3d 534 (9th Cir.1993); *Nutmeg*, 836 F.Supp. at 388. It contends, however, that the specific damages alleged by the Shop Owners in the case at bar are encompassed within the "loss of use" prong of the Policy's definition of "property damage." As the Shop Owners seek to recover for financial losses created by construction-imposed restrictions on access to their property and by its consequent loss of use, Gibson reasons, their damages constitute "loss of use of tangible property that is not physically injured," (Pl.'s Ex. H § V.12), and thus are covered by the Policy.

The Court finds Gibson's argument persuasive. Notably, although Texas courts have apparently not addressed this issue, there are cases from other jurisdictions that have found covered property damage to exist under substantially similar factual circumstances. One such case is *Geurin Contractors, Inc. v. Bituminous Casualty Corp.*, 5 Ark.App. 229, 636 S.W.2d 638 (1982). There, a store owner filed suit against a construction contractor for the alleged negligent performance of a contract to pave the highway along which the plaintiff's store was located. The plaintiff alleged that due to construction, the road was closed, causing his property to become inaccessible, and sued the contractor for the amount of his lost profits. The contractor's insurance carrier denied coverage, arguing in part that the plaintiff's lost profits

did not constitute "property damage." The court of appeals disagreed:

> The policy defines 'property damage' as physical injury to or destruction of tangible property, including loss of use of the property. Furthermore, it defines 'property damage' as loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence.

*Id.*, 636 S.W.2d at 641. Having already determined that the loss was caused by an "occurrence," the court concluded that the plaintiff had indeed incurred "property damage" and that the claim was hence covered by the plaintiff's liability policy. *Id.*

Similarly, in *Sola Basic Industries, Inc. v. United States Fidelity & Guaranty Co.*, 90 Wis.2d 641, 280 N.W.2d 211 (1979), the Wisconsin Supreme Court cited with approval a commentator's argument that loss of access to a plaintiff's store due to a contractor's negligence represented loss-of-use property damage, even absent any physical harm to the store. *Id.*, 280 N.W.2d at 214 (quoting Obrist, *The New Comprehensive General Liability Insurance Policy* (1966)). A Wisconsin appellate court, in turn, held in *Western Casualty & Surety Co. v. Budrus*, 112 Wis.2d 348, 332 N.W.2d 837, 839–40 (App.1983), that a farmer's complaint alleging that the insured had sold the plaintiff seeds that, after having been planted, turned out to be useless to the plaintiff could be interpreted as stating a claim for loss of use of the plaintiff's field, and hence for property damage. Home apparently disagrees with these opinions and instead seeks to characterize the damage sustained by the Shop Owners as a mere loss in profits. Yet Home has failed to cite to any case authority that supports its position with regard to facts similar to those existing in the present dispute, nor has the Court encountered such a case. Because the Court finds the reasoning of the Arkansas and Wisconsin courts persuasive and believes that Texas courts, if confronted with the issue, would adopt the same approach, it concludes that the losses asserted by the Shop Owners represent "property damage" as defined by the Policy.

### 3. Occurrence

■■■ Home further submits that there was no policy coverage because the cause of the Shop Owners' damages—that is, the closing of Main Street—did not represent an "occurrence" under the Policy since it was neither unintentional nor accidental. Once again, this Court disagrees. The damage to the Shop Owners cannot be characterized as the "inevitable and predictable" consequence of Gibson's conduct; therefore, the events causing the damage constituted an "occurrence" within the meaning intended by the Policy. *See Meridian Oil Prod., Inc. v. Hartford Accident & Indem. Co.*, 27 F.3d 150, 152 (5th Cir.1994).

"Occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy language in the instant case thus excludes the additional limitation commonly employed in comprehensive general liability policies which requires that the resultant bodily injury or property damage must have been "neither expected nor intended from the standpoint of the insured." Arguably, then, this Policy includes within its scope of coverage even expected and intended consequences of the insured's conduct. Texas courts, however, have customarily applied a significantly narrower interpretation to the term "occurrence" by holding that "injuries are 'accidental' and within the coverage of an insurance policy ... if from the viewpoint of the insured, the injuries are not the natural and probable consequences of the action or occurrence which produced the injury." *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex.1976). The Court hence must "afford coverage for fortuitous damages but deny coverage when damages are the natural and probable consequence of intentional conduct." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1054 (5th Cir. 1996). The focus in that regard "is not on whether the insured's conduct or actions were intentional, but on whether the insured intended the damages or injuries which are the subject of the underlying claims." *Id.*

The City's lawsuits against Gibson make no allegation of intentional conduct. The Shop Owners' action likewise does not assert any intentional misconduct but alleges only that the closing of Main Street was the result of negligence. Home, accordingly, had no basis for concluding, upon review of the "eight corners" of the policy and pleadings, that Gibson in any way intended to bring about the damages sustained by the Shop Owners.

Nor do the allegations in the underlying lawsuits necessarily lead to the conclusion that the Shop Owners' loss of use of their property represented a direct damage that naturally followed from Gibson's conduct. *See Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 604–05 (5th Cir.1991) (holding that a comprehensive general liability policy does not cover direct damages). To the contrary, the Shop Owners assert that the complete closing of Main Street resulted from inadequate forecasts of the scope of construction that would be necessary, and nothing in the City's complaints, which incorporate the Shop Owners' pleadings, negates this possibility. The Shop Owners' loss of their leases, occasioned by the reduction in the flow of customers, can at best be regarded as a consequential damage that was neither intended nor certain to occur.

When the extent of damages exceeds the harm normally foreseeable, courts generally find that the defective performance of work constitutes an "accident" within the meaning of the policy provisions. *See Cruse*, 938 F.2d at 605 (citing *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503 (Tex.Civ.App.—Texarkana 1979, no writ)). Based upon similar considerations, the *Geurin* court determined that the closing of a highway due to alleged negligent construction, causing extensive loss-of-use property damage to abutting business owners, was an unexpected and unintended "occurrence." *Geurin*, 636 S.W.2d at 640–41; *see also Budrus*, 332 N.W.2d at 839–40 (holding that loss of use of a field occasioned by the negligent sale of mistagged seed constituted an "occurrence").

The Court concludes that, as the City's complaints against Gibson can be interpreted to allege property damage that was neither the expected nor the intended consequence of Gibson's breach, Home was precluded from

denying Gibson a defense on the grounds that no "occurrence" had been alleged.

### 4. Policy Exclusions

Finally, Home submits that the City's indemnity claim is exempted from coverage under exclusion (b). In particular, Home insists that the indemnification clause of Gibson's contract with the City is not an "insured contract" and therefore not exempted from the application of exclusion (b). Since that exclusion operates to remove from coverage all claims for property damage which the insured is obligated to pay by reason of the assumption of liability in a contract other than an insured contract, Home reasons, Gibson could not rely on coverage for the City's claim for indemnification.

Under the Policy, an "insured contract" refers to "[t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Because the City's complaints allege that Gibson agreed to indemnify the City only for claims seeking damages "that arise out of a breach of any term of the contract by [Gibson]," Home argues that the City of Dallas never sought to recover indemnification for its own *tort* liability but only for liability caused by Gibson's breach of contract and that the indemnity clause accordingly did not meet the requirements for an "insured contract."

Such reasoning, however, seems to be inherently flawed. To be sure, the City does allege that its liability to the Shop Owners arose from Gibson's breach of the contractual agreement to conduct road construction in such a way as not to impede access to businesses along Main Street during business hours. The claims asserted against it by the Shop Owners, however, sought to hold the City liable not for breach of contract, but rather for negligence and unconstitutional deprivations of property.[4] Clearly, the mere fact that the City's indemnification actions

against Gibson arise from the parties' contractual relationship does not convert the Shop Owners' tort-based causes of action against the City into breach-of-contract claims.

Even disregarding the specific tort allegations contained in the Shop Owners' complaints, moreover, it is evident that the City's third-party actions encompass within their scope claims for indemnity for the City's potential tort liability to the Shop Owners. Thus, the City's third-party complaints state quite broadly that the Shop Owners sought to recover from the City on the grounds that "construction activities along Main Street ... constituted a taking under the Constitutions of the State of Texas and the United States of America, and that the alleged total denial of access to [the Shop Owners'] properties caused damage to [the Shop Owners], for which they are entitled to redress." Nothing in the City's complaints suggests that the Shop Owners somehow sought to exclude recovery for tort-based injuries. Consequently, as the Shop Owners' actions do in fact include causes of action that sound in tort, and as the City's third-party complaints allege that Gibson agreed to assume all such liability if it was caused by a breach of contract on Gibson's part, the Court finds that the indemnification clause constitutes an "insured contract" not exempted from coverage by exclusion (b).

In sum, the eight corners of the complaint and the policy indicate that there was potential coverage for the indemnification claim asserted against Gibson by the City of Dallas. As long as the allegations made in the underlying lawsuit potentially state any cause of action within the policy provisions, however, the insurance carrier is compelled to provide a defense against the action in its entirety. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965). Gibson, therefore, is entitled to summary judgment on its claim that Home breached its duty to defend it against the City's claims.

---

**4.** Not only the Shop Owners' negligence action but also their constitutional claims arising under the takings clause arguably assert tort liabilities given the broad definition of that term supplied

by the Policy: "Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Pl.'s Ex. H § V.6.f.

## CONCLUSION

Having found that the factual allegations of the third-party complaint filed by the City of Dallas against Gibson state a claim for indemnification that is potentially within the coverage provisions of Home's commercial general liability policy under which Gibson was insured at the time of the events in question, the Court concludes that Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's claim for breach of the duty to defend should be GRANTED. The cross-motion for summary judgment filed by Defendant, Home Insurance Company, must accordingly be DENIED.

**So Ordered.**