ACCEPTANCE INSURANCE COMPANY and Redland Insurance Company, Appellants,

v.

LIFECARE CORP., Appellee.

No. 13–01–343–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Oct. 24, 2002.

Craig Haworth Clendenin, Bencken-stein, Norvell & Nathan, L.L.P., Houston, for Appellant.

Lindsay Lee Lambert, Baker & Hostet-ler, L.L.P., Houston, for Appellee.

Before Justices HINOJOSA, RODRIGUEZ, and WITTIG.[1]

## OPINION

Opinion by Justice WITTIG (Retired).

This is a commercial insurance coverage dispute concerning the meaning of the term "occurrence." A comprehensive general liability (CGL) policy was issued by appellants, Acceptance Insurance Company and Redland Insurance Company, in favor of their insured, Lifecare Corporation, appellee. The factual contentions center around a former employee of Lifecare. Lifecare was sued for negligently providing inaccurate information in a job information request. Both sides filed motions for summary judgment. The trial court denied appellants' motion and later granted a partial summary judgment for appellee. A bench trial determined the remaining issues concerning the reasonableness of a settlement and attorneys' fees. Only the coverage issues, disposed of by summary judgments, are appealed. We examine the trial court's determination that the contractual terms of appellants' policy provided coverage. We apply contract law to address the critical terms "occurrence," "accident," and "intentional," as well as appellants' claimed exclusion under "employment related activities." We will affirm.

## Background

This appeal originates from a third party action by Lifecare against appellants. Lifecare had been sued in the underlying action because it negligently provided information which it should have known was incorrect. Specifically, plaintiff's pleadings against appellee charged: "Defendant LIFECARE CORPORATION is guilty of certain acts and omissions, each of which constitute negligence and each of which was a proximate cause of the Plaintiff's injuries and damages as more fully set out herein. Such negligence [sic] acts and omissions arise from the failure of Lifecare to exercise ordinary care in determining that the information it transmitted concerning Mr. Willis was accurate." [2]

---

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

2. Found in Plaintiff's Second Amended Origi-

After leaving Lifecare, Gary Willis ended up working at the Thomas Care Center. Thomas Care Center had contacted Lifecare but received some wrong information about Willis. Later, while working for Thomas Care Center, Willis was involved in a sexual assault of Nettie Belle Davis—plaintiff in the original action. Davis sued Thomas Care and Lifecare. Lifecare filed a third party action against appellants after they denied a request for defense and indemnification under the CGL policy.

Appellants argue two issues. First, they contend there is no coverage under "coverage A" because there was no occurrence. Next they argue, in the same issue, there is no coverage under policy part B, because there is no personal injury claimed that was covered and the only relevant inquiry is whether the insured's liability is related and interdependent to the underlying sexual tort.[3] In their second issue, appellants argue for the application of the "Employment–Related Practices Exclusion."

## Standard of Review

We review the trial court's granting of a motion for summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Texas Commerce Bank–Rio Grande Valley v. Correa*, 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). Appellee was required to establish that no genuine issue of material fact existed and that judgment should be granted as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). Where the only question presented to the trial court was a question of law and both sides moved for summary judgment, the

appellate court should render the judgment that the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.*, 33 S.W.3d 102, 104 (Tex.App.-Corpus Christi 2000, pet. denied); *The Cadle Co. v. Butler*, 951 S.W.2d 901, 905 (Tex.App.-Corpus Christi 1997, no writ).

## Discussion

### Occurrence

Appellants argue there was no "occurrence" under the CGL policy. The policy provided in pertinent part:

SECTION 1—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE

1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage:' to which this insurance applies.

 b. This insurance applies to 'bodily injury' and 'property damage' only if:

 (1) The 'bodily injury' or 'property damage' is caused by an occurrence that takes place in the 'coverage territory;' and

 (2) The 'bodily injury' or 'property damage' occurs during the policy period.

 c. Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'

nal Petition.

**3.** Appellee argues in the alternative for coverage under coverage B, advertising injury. Although we do not reach the second part of

appellants' first issue, we agree with appellants that this coverage is clearly not applicable.

"Occurrence" is defined under section 5: "9. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Accident is not defined.

Section 1, coverage A(2)(a) states, the coverage is inapplicable to " 'bodily injury'... expected or intended from the standpoint of the insured." [4]

Appellants argue that although "accident" is not defined under the policy, the supreme court has adopted a general rule holding where acts are voluntary and intentional and the injuries are the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen, and unintended. *Wessinger v. Fire Ins. Exch.*, 949 S.W.2d 834, 837–38 (Tex.App.-Dallas 1997, no writ) (describing analysis of whether injuries were caused by "accident" as "two-step" process under *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973)). Following this argument and authority, we first determine whether specific acts alleged to have caused the plaintiff's injuries in the underlying suit were "voluntary and intentional." If so, then we next determine whether the injuries alleged were a "natural result" of the acts. *Wessinger*, 949 S.W.2d at 838. However, we first observe that Wessinger was voluntarily intoxicated and thus his conduct in striking another was voluntary and intentional. Both the nature of Wessinger's conduct and the injuries naturally resulted from the intentional conduct. *Id.* at 839. There are no such allegations against Lifecare. *See id.* at 837. Rather, the contributing acts by the insured Lifecare were neither voluntary nor intentional. The insured and its agents' or employees' conduct said to have caused the injuries were purely and simply negligence. The specific *and only* facts alleged against Lifecare were the negligent representations. "If we determine the acts that produced the alleged injuries were committed involuntarily and unintentionally, our inquiry stops there because the results of the acts would be accidental." *Id.* "When a result is not the natural and probable consequence of an act or course of action, it is produced by accidental means." *Id.*[5] Thus, even under *Wessinger* and *Maupin*, Lifecare's acts that produced the injuries were involuntarily and unintentional and thus accidental.

Citing *Folsom Inv. Inc. v. Am. Motorists Ins. Co.* 26 S.W.3d 556 (Tex.App.-Dallas 2000, no pet.), appellants next argue the negligence of Lifecare was related and interdependent on the intentional conduct of its former employee. In *Folsom*, the underlying plaintiffs alleged that while they worked for Folsom, O'Mealey made unwelcome sexual advances toward them, requested sexual favors, used sexually abusive and vulgar language, and engaged in other verbal and physical conduct. *Id.* at 561. The plaintiffs also alleged Folsom knowingly allowed O'Mealey's actions to continue. "Here, Folsom's liability is related to and interdependent on O'Mealey's tortious activities." *Id.* O'Mealey's acts of sexual harassment were not an accident because they were intentional and the harm caused by the acts was a natural or probable result of those acts. *Id.*

*Folsom* does not rely on Texas authority, but rather turns to the federal system's interpretation of Texas law. *See Am.*

<hr>

4. The importance of this language is discussed in *King v. Dallas Fire Ins. Co.*, 85 S.W.3d at 188–89 (2002).

5. We observe the insurer may have had any number of legitimate liability defenses it could have raised on behalf of its insured—had it only defended Lifecare. The issues here are contract, not potential tort defenses.

*States Ins. Co. v. Bailey,* 133 F.3d 363 (5th Cir.1998). There, two women sued Bailey, who was the pastor-in-charge of First United Methodist Church of Fort Worth, four associate ministers, and the church. *Id.* at 366. The women alleged Bailey committed various sexual improprieties and that the church and the associate ministers knew or should have known of Bailey's conduct and should have attempted to stop his behavior. *Id.* The women's specific claims against the church and the associate ministers included allegations of negligence, including negligent hiring and supervision of Bailey. *Id.* at 367.

However, *Bailey* had a specific sexual act exclusion. Anything "arising out of" a sexual act was excluded under the specific policy language. The *Bailey* court held:

> The plain meaning of "sexual action" as described in the exclusion includes all of Bailey's misconduct. It is impossible to characterize Bailey's behavior as other than having a "sexual connotation or purpose" and being "performed for sexual gratification." The exclusion establishes very broad parameters....

> This court has held that the words "arising out of," when used within an insurance policy, are "broad, general, and comprehensive terms effecting broad coverage." The words are "understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" Without Bailey's sexual misconduct, Cooke and Levin would have no claims against FUMC and the four associate ministers. Every alleged harm caused to Cooke and Levin by FUMC and the four associate ministers stems from and is integrally related to Bailey's acts. Therefore, ... all of the factual allegations that underlie Cooke's and

Levin's legal claims against FUMC and the four associate ministers arise out of Bailey's sexual actions, thereby precluding coverage under Western World's policies.

*Id.* at 360 (internal citations and footnote omitted).

▮ *Bailey* does, by way of dicta, support in an extenuated fashion, appellants' argument. Appellants argue from *Folsom* and *Bailey,* that the complained of conduct was "related to and interdependent." The *Bailey* court's rationale was based upon agency principles not at all applicable to the facts alleged against Lifecare. The *Bailey* court observes:

> For instance, in *New York Life Ins. Co. v. Travelers Ins. Co.,* New York Life was sued for the negligent hiring, training, and supervision of one its employees, who allegedly defrauded a New York Life client. *See New York Life Ins. Co.,* 92 F.3d at 337, 340. The court found that the employee's underlying fraudulent acts were not an "occurrence" under the policy. *See id.* at 339. Consequently, the court held that the claims against New York Life were excluded from coverage because "[a] claim against a principal is 'related' to and 'interdependent' on a claim against an agent if the claim against the principal would not exist absent the claim against the agent." *Id.* at 340.

*Id.* at 371–72.[6] The case law cited by appellant supports the proposition that when an agent's conduct is "related and interdependent" with that of the principal, and absent the agent's conduct, there would be no claim against the principal, there is no covered occurrence. *See id.* This line of cases does not however ad-

---

6. *Bailey* relies on *Cowan* for its definition of occurrence/accident. *Am. States Ins. Co. v.*

*Bailey,* 133 F.3d 363, 372 (5th Cir.1998).

dress our situation. There is no existing agency relationship between the sexual predator and appellants' insured Lifecare. There are no factual allegations of intent against the insured. There are no agency interdependency links between the conduct of Lifecare and its ex-employee.

In any event, the Texas Supreme Court recently has expressly found this federal authority "erroneous:" "[W]e conclude the Fifth Circuit's rule improperly imputes the actor's intent to the insured. That is to say, whether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 191 (2002).[7]

Appellant next argues *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112 (7th Cir.1995). We quote:

> A volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident.... However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident.

*Id.* at 1118. In context, *GATX* went on to hold: "Where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended." *Id.*

In *GATX*, the claims against it involved a Houston area petroleum product and transfer station. *Id.* at 1113. GATX and related companies were charged by Arco and TCR, among others, alleging breach of contract, breach of guarantee, negligence, fraudulent inducement and misrepresentation, and conversion. *Id.* at 1114. In June 1985, Arco and TCR discovered that vast quantities of their stored products were missing, and TCR found that further quantities of its fuel had been degraded by foreign chemical substances. *Id.* at 1113. This discovery was delayed, because GATX and its employees represented that their inventories were consistent with the quantities of product originally delivered for storage, and that GATX employees conspired to hide the thefts of the product. *Id.* "An examination of the pleadings in the underlying litigation makes clear that the plaintiffs in that case sought recovery against GATX for theft, conversion, and contamination of petroleum products." *Id.* at 1116. The gravamen of the complaint was theft and contamination, both volitional and intentional acts. The negligence portion alleged "GATX had supervised its personnel in a negligent manner and therefore permitted the theft." *Id.* at 1118.[8]

Thus, we read appellant's argument in context: Intentional theft and contamination does not become an accident simply because the insured's action prompted the intentional act. Injury caused by negligence, must be distinguished from injury that is caused by a deliberate and contem-

---

7. To the extent *Folsom* relies on *Bailey*, its authority seems to be seriously undermined, except, perhaps, to derivative claims under *respondeat superior*. *See infra* note 8.

8. In *King*, the supreme court did not expressly address the duty to defend "on only the vicarious liability claim." *King*, 85 S.W.3d at 185–86. However, we believe *King* clearly disapproves any disavowal of coverage for the independent negligence of the employer or any employee. *Id.* at 188.

plated act—like theft—initiated at least in part by the actor's (insured's) negligence at some earlier point. Once again, Lifecare and its agents committed no volitional act causing injury. Lifecare is not charged with rape, theft, contamination or any intentional or volitional act. *GATX* is inapplicable.

Appellants cite several unpublished cases and New York cases which describe combinations of intentional acts—typically sexual conduct—and allegations of negligence. In all these scenarios, the joint assertions of intent and negligence are against the same insured. Most involve agency principles, discussed above. None address our context.

Finally, appellants argue that in the absence of its *former* employee's conduct, there would be "no liability for negligent referral." [9] They cite *Old Republic Ins. Co. v. Comprehensive Health Care Assocs. Inc.,* 2 F.3d 105, 109 (5th Cir.1993). First, we note this case deals with sexual abuse exclusions and specifically does not address the "occurrence" issues. *Id.* at 107–08. *Old Republic* does state: "the negligence claims against CHCA are inextricably intertwined with the underlying sexual harassment and discrimination claims. In Texas, because the underlying claim for intentional harassment is excluded from policy coverage, the interrelated negligence and slander claims are also not covered." *Id.* at 108 (citing *Thornhill v. Houston General Lloyds,* 802 S.W.2d 127, 130 (Tex.App.-Fort Worth 1991, no writ); *Centennial Ins. Co. v. Hartford Accident & Indem. Co.,* 821 S.W.2d 192, 194–95 (Tex.App.-Houston [14th Dist.] 1991, no writ)). But in addition to the specific sexual abuse exclusion, there were also a slan-

der and other applicable employment-related exclusions. *Id.* at 107–09. And, once again, all of the allegations, intentional, sexual, slander and negligence, were asserted in one intertwined basket, against the same employer, and the same insured. *Id.* at 109.

This is much the same concept the supreme court found in *Bonded Realty, Inc. v. St. Paul Ins. Co.,* 583 S.W.2d 619 (Tex. 1979). Although one act by the insured was not found to be knowingly false, "that act was inseparable from the other acts where knowledge of the falsity was established and was a concurrent cause of the damage sustained." *Id.* at 620. Unlike *Bonded Realty,* Lifecare was not charged with any intentional conduct that is interrelated, inseparable, or concurrent conduct *of the insured.* In any event, the Texas Supreme Court has rejected this "related and interdependent" doctrine. *King,* 85 S.W.3d at 191.

■■■■ We conclude there are a number of reasons the trial court properly found coverage. First, rules of construction favor the insured and we look to the allegations that would afford coverage. As a general rule, insurance contracts are interpreted under the same rules of construction as standard contracts. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). However, if the insurance policy is susceptible to more than one reasonable interpretation, any ambiguity will be resolved by adopting a construction that favors the insured. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 554 (Tex.1991); *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex. 1976). The duty to defend arises if the factual allegations against the insured,

---

9. We assume appellants mean there would be no coverage. The issue is contract coverage, not whether or not there was liability under the coverage. Not only do appellants mistak-

enly argue "no liability," they also incorrectly argue for the application of the "but for" tort causation rule—rather than the application of contract construction rules.

fairly and reasonably construed, state a cause of action potentially covered by the policy. *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex.App.-Dallas 1993, writ denied). If a petition against an insured alleges *only* facts that are not covered by the policy, the insurer is not required to defend. *Id.*

The live pleadings and factual allegations against Lifecare demonstrate only a negligent representation claim. The operative facts giving rise to any liability to the insured Lifecare, are not intentional but instead are indicative of an occurrence, at least as to the parties to the contract, the insured and the insurer. We believe this claim, fairly and reasonably construed, states a cause of action potentially covered by the policy.

■■■■ Second, we observe some confusion at the line of interplay between contract and tort law. This is a contract case. The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex.App.-Houston [1st Dist.] 1997, no writ) (citing *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex.App.-Houston [1st Dist.] 1995, no writ)). If we interpret under the same rules of construction as standard contracts, then it is error for a court to apply a tort "but for" causation rule, to contract construction rules. *See King*, 85 S.W.3d at 191; *see also Barnett*, 723 S.W.2d at 665.

There is no argument that all contractual elements are met.[10] The only issues flow from interpretation of the contract between the insured and insurer. Following contract law, we are constrained to view the terms "occurrence" and "accident" from the perspective of the two contracting parties under the eight corners rule. *King*, 85 S.W.3d at 187.

■■■■ Third, the insurance policy in question is a broad form, all-risk policy. It is purported to be "comprehensive" for all "general liability" unless excluded by specific policy language. Exceptions and limitations in an insurance policy are strictly construed against the insurer. *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex.1984). Normally, the language and terms of an insurance policy are chosen by the insurance company. This being so, when the language chosen is susceptible of more than one construction, such policies should be construed strictly against the insurer and liberally in favor of the insured. *Barnett*, 723 S.W.2d at 666 (citing *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977); *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex. 1976); *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex.1965)).[11]

■■■■ Fourth, both the term accident and intentional conduct must be viewed from the point of view of insured and intent of insured. *King*, 85 S.W.3d at 191. Courts determine whether certain conduct constitutes an "accident" for purposes of insurance coverage on a case-by-case basis. *Wessinger*, 949 S.W.2d at 837. An

---

**10.** Nor is it disputed Lifecare paid appellants a premium of over $51,000.00.

**11.** These construction rules favoring the insured are applicable when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, then these rules do not apply. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991).

event is accidental within the meaning of the policy coverage if it is "an effect that cannot be reasonably anticipated from the use of [the means that produced it], an effect which the *actor* did not intend to produce and which he cannot be charged with the design of producing." *Cowan,* 945 S.W.2d at 827–28 (emphasis added) (quoting, approving, and distinguishing *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 555 (Tex.1976)). On the other hand, an intentional act that results in injuries which would ordinarily follow from, or could reasonably be anticipated from, the intentional act is not an occurrence within the meaning of the policy definition. *Cowan,* 945 S.W.2d at 827–28.

The *Wessinger* court agreed with *Cowan:*

> When a result is not the natural and probable consequence of an act or course of action, it is produced by accidental means. The natural result of an act is the result that ordinarily follows, may be reasonably anticipated, and ought to be expected. This standard is objective. A person is held to intend the natural and probable results of his acts even if he did not subjectively intend or anticipate those consequences.

*Wessinger,* 949 S.W.2d at 837–38 (citing *Heyward,* 536 S.W.2d at 556).

In *Schlakzug,* the supreme court held: "if the insured did not know or anticipate that the plucking of a hair from his nose would produce a wound therein, then as to him the wound so produced would be unexpected and unforeseen, and therefore would be an accidental wound." *Pac. Mut. Life Ins. Co. of California v. Schlakzug,* 143 Tex. 264, 183 S.W.2d 709, 711 (1944).

*Schlakzug* in turn relies upon another supreme court case, *Int'l Travelers' Ass'n v. Francis.* And *Francis* relies upon Cooley's Briefs on Insurance (2d Ed.). The exact language is instructive and appears to be followed by the *Cowan, Wessinger* and *King* courts:

> An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means. It is produced by means which was neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means. Cooley's Briefs on Insurance (2d Ed.) vol. 6, p. 5234.

*Int'l Travelers' Ass'n v. Francis,* 119 Tex. 1, 23 S.W.2d 282, 285 (1930).

We examine one last definition of accident from a garage liability policy addressed in *Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501 (Tex.Civ.App.-Texarkana 1979, no writ). A garage mechanic did a valve job for the plaintiff. *Id.* at 502. The engine exploded, rendering it useless. *Id.* at 503. The Travelers Insurance Company argued that the general coverage provisions of the policy excluded the plaintiff's claim because his damages were not caused by an accident, and the policy provided coverage only for liability due to an "occurrence," which the policy defined as an accident. *Id.* The court held: "The

term accident, as used in a policy of this type, means an unexpected, unforeseen or undesigned happening or consequence from either a known or unknown cause." *Id.* (citing *Employers Cas. Co. v. Brown–McKee, Inc.*, 430 S.W.2d 21 (Tex.Civ.App.-Tyler 1968, writ ref'd n.r.e.); *Bundy Tubing Co. v. Royal Indem. Co.*, 298 F.2d 151 (6th Cir.1962); *Hauenstein v. St. Paul–Mercury Indem. Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954)). Although the performance of the work itself might or might not be considered an accident, the destruction of the engine as a result of the malfunction of one of the repaired valves was certainly unexpected and unintended, and constituted an accident within the meaning of the policy provisions. *Id.*

■ Fifth, precedent also shows there was no "intent" under these circumstances. In *Reed Tool Co. v. Copelin*, 689 S.W.2d 404 (Tex.1985), the Texas Supreme Court adopted the definition of "intent" provided in the Restatement (Second) of Torts. Intent means "that the *actor* desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* at 406 (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965) (emphasis added)). The court then held "that the intentional failure to furnish a safe place to work does not rise to the level of intentional injury except when the employer believes his conduct is substantially certain to cause the injury." *Id.* at 407.

■ Finally, other language in this policy supports the trial court's conclusion. The only express exclusion of non-accidental or intentional conduct is written from the perspective of the insured. The intentional conduct exclusion specifically delimits: " 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Based on the contract definition of "occurrence," and the contract

language in the intentional exclusion clause, we follow *King* and hold that the determination of whether "the act was intentional was to be determined from the 'standpoint of the insured.' " *King*, at 191–92. Thus, from the standpoint of the insured, there was no intentional conduct. Rather, the negligent representation and its damages were an accident and thus fall within the terms of the CGL policy.

We hold the trial court correctly determined there was an occurrence under this CGL policy. The analysis of the term "occurrence" is largely determined by whether the activity was expected or intended from the standpoint of the insured. *Heyward*, 536 S.W.2d at 557. It is the damage, and not the accident, which is neither expected nor intended. *Union Pac. Res. Co. v. Aetna Cas. & Sur. Co.*, 894 S.W.2d 401, 404 (Tex.App.-Fort Worth 1994, writ denied). An event is accidental within the meaning of the policy coverage, if it is "an effect that 'cannot be reasonably anticipated from the use of [the means that produced it], an effect which *the actor* did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.' " *Cowan*, 945 S.W.2d at 827 (emphasis added) (quoting, approving, and distinguishing *Heyward*). We overrule appellants' first issue.

*Employment–Related Exclusion*

We now address appellants' employment-related exclusion issue. The policy provides in pertinent part:

1. The following exclusion is added to COVERAGE A (Section I):

 o. 'Bodily injury' arising out of any:

 (1) Refusal to employ;

 (2) Termination of employment;

 (3) Coercion, demotion, evaluation, reassignment, discipline, defama-

tion, harassment, humiliation, discrimination, or other employment-related practices, policies, acts or omissions; or

(4) Consequential 'bodily injury' as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of injury.

Appellants specifically center their argument on subsection (3) "evaluation ... or any other employment related practices, policies, acts or omissions." Appellants take the position that when Lifecare negligently gave information to Thomas Care about its former employee, it was providing an evaluation and the exclusion operates because the insured may not be held liable as an employer or in any other capacity. Appellants argue the employment related exclusion, "as it relates to statements about a prior employee was thoroughly discussed in *Frank & Freedus v. Allstate Ins. Co.*, 45 Cal.App.4th 461, 52 Cal.Rptr.2d 678 (1996)." The California situation was dissimilar. There, Caprow sued his former employer, Frank and Freedus, for defamation related to his termination. *Id.* at 471, 52 Cal.Rptr.2d 678. The case holds:

> The defamation here was clearly employment-related. The statement was made in the context of Caprow's employment and its content is directed to Caprow's performance during employment. Thus, the defamation falls within subdivision (2) of the exclusion. The defamation is also encompassed within subdivision (3) of the exclusion, i.e., a personal injury (defamation) arising out of termination of employment; the statement was made in the context of and related to Caprow's termination of employment.

*Id.* Frank and Freedus sought coverage because of "a complaint by a former employee seeking damages for wrongful termination and defamation." *Id.* at 465, 52 Cal.Rptr.2d 678. The coverage was correctly denied because of two clear exclusions: (1) the termination exclusion; and (2) because the alleged defamation was made in the employment context. We particularly note the context. The Frank and Freedus law firm was sued by its former employee in clear distinction to our case where an employer was sued by a unrelated third party.

Next, appellants cite *Berman v. Gen. Accident Ins. Co.*, 176 Misc.2d 13, 671 N.Y.S.2d 619, 622–23 (1998). This New York case, like *Frank & Freedus*, was a direct action by a former partner (employee) of the firm, arising out of fraudulent negotiations and defamation surrounding the discharge of Dr. Attas. *Id.* at 621–23. "Dr. Attas brought a lawsuit against Dr. Berman and Park East alleging, *inter alia*, that she had been defrauded in her negotiations with Dr. Berman regarding her purchase of the clinic and defamed by Dr. Berman subsequent to her discharge." *Id.* at 621. As noted by appellants, statements made by Dr. Berman, mildly criticizing Dr. Attas to the staff and a patient, fell squarely within the policy exclusion of specified employment related practices such as evaluation and defamation. *Id.* at 623.

 Appellee counters that appellants' argument is wrong because there was no allegation of employment evaluation and the plain language of the exclusion is inapplicable. Appellee is correct that the allegation against Lifecare was that it negligently gave information. There is no factual allegation in the underlying pleadings, that an *evaluation* was requested or given. The allegation was that negligent acts and omissions arose

"from the failure of Lifecare to exercise ordinary care in determining that the information it transmitted concerning Mr. Willis was accurate." As appellee correctly argues, under the eight corners rule, the courts look to the allegations within the pleadings in the light of the policy provisions without reference to the truth or falsity of such allegations. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965). If there is any doubt as to whether the allegations state a claim covered by the policy, such doubt is resolved in favor of the insured. *Id.* at 26. Because appellee is right that there is no allegation against Lifecare that it gave an employment-related evaluation, the exclusion is not raised by the controlling factual allegations. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997) (in determining an insurer's duty to defend its insured, we look only to the pleadings and the insurance policy).

■ Appellee also argues for the application of the doctrine of *ejusdem generis.* "Under the rule of *ejusdem generis,* where specific and particular enumerations of persons or things in a statute are followed by general words, the general words are not to be construed in their widest meaning or extent, but are to be treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned." *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 272 (1944). This doctrine finds application in construing the term "other employment related practices." This clause is to be applied to persons or things in the same kind or class as those expressly mentioned. *Id.* Thus,

other employment-related practices would likely not refer to such things as kindercare, health coverage, vacation time, or even post-employment. Rather, employment-related practices, would first have to be plainly related to the job (or insured) referenced in the insurance policy, and secondly, be in the class of coercion, demotion, evaluation, reassignment, discipline, defamation, *et cetera.*

Finally, appellee directs our attention to another out-of-Texas case involving a former employee who sued his ex-employer for defamation resulting in a coverage denial on a similarly worded employment-related acts exclusion. *See HS Servs. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 644 (9th Cir.1997).[12] The Ninth Circuit succinctly differentiated its own precedent cited by appellants, *Frank & Freedus:*

> In the case at bench the defamation is not "clearly employment-related" because, although its content is directed to Cade's employment, the statements were not made in the context of Cade's employment. In *Frank and Freedus* the defamatory remark was directly related to employment in that it related to the employer's attempts, as employer, to explain the termination to its other employees; that was its context. It was "clearly" an attempt by the employer, as employer, to bolster employee morale and, thus, was employment-related.

> Here, the purpose of the remarks was to protect Cade-Grayson in the marketplace. The remarks related directly to competition between Cade and Cade-Grayson in the marketplace and the lat-

---

**12.** The policy's "Employment Related Practices Exclusion" provided that coverage does not apply to:

 c. "Personal injury" arising out of any:
 (1) Refusal to employ;
 (2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts or omissions; or
(4) Consequential "personal injury" as a result of (1) through (3) above.

ter's attempt to protect itself against a remark made by Cade, not as an ex-employee, but as a present competitor; that was their context. While it may be literally true that the remarks "related" to Cade's employment, that relationship was too indirect and attenuated to qualify under the exclusion. In short, because of the difference in context, this case is not controlled by *Frank and Freedus.*

*Id.* at 646.

Considering the exclusion in context, we first agree there was no request for an evaluation. Nor can we say the exclusion argued reaches Lifecare's non-employment or post-employment activities as described. The policy excluded activities that were not alleged. The situation is further attenuated because the worker was gone. When the employment ended, the activity is less likely to be employment related except perhaps in some defamation or termination circumstances as illustrated by *Frank & Freedus. See Frank & Freedus,* 45 Cal.App.4th at 471, 52 Cal.Rptr.2d 678. Here there is no factual allegation of coercion, demotion, evaluation, discrimination "or other employment related practices, policies, acts or omissions." The only factual allegation is in the nature of a negligent representation. It was claimed Lifecare gave the wrong information about a former employee. While an evaluation may be a negligent representation, a negligent representation is not necessarily an evaluation.

 This court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987). Further, in consider-

ing the allegations in the plaintiff's petition to determine whether they fall within the coverage, a liberal interpretation of the meaning of those allegations should be indulged. *Heyden,* 387 S.W.2d at 26; *Norvell Wilder Supply Co. v. Employers Cas. Co.,* 640 S.W.2d 338, 340 (Tex.App.-Beaumont 1982, writ dism'd w.o.j.). Even where the injured person's petition does not state facts sufficient to clearly bring the case within or without the coverage, the insurer is obligated to defend if there is potentially a case under the complaint within the coverage of the policy. *St. Paul Ins. Co. v. Rahn,* 641 S.W.2d 276, 279 (Tex.App.-Corpus Christi 1982, no writ); *Fort Worth Lloyds v. Garza,* 527 S.W.2d 195, 199 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.). Any doubts in that regard will be resolved in the insured's favor. *Heyden,* 387 S.W.2d at 26. The factual allegations within a petition are broadly construed when determining if a petition alleges facts that potentially state a claim within the coverage of a policy. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Bradleys' Elec., Inc.,* 33 S.W.3d at 104. Thus, we hold, appellants have not demonstrated, that either the specific insurance contract language they rely on, or their summary judgment proof, entitle them to the application of this employment related exclusion. We overrule appellants' second issue.

The judgment of the trial court is affirmed.