OPINION
 

 GUZMAN, Justice.
 

 In this appeal, we must resolve duty-to-defend issues regarding a Homeowners’ Policy and a Personal Liability Umbrella Policy. Specifically, we are asked to determine whether appellees, State Farm Lloyds and State Farm Fire and Casualty Company (“State Farm”), had a duty to defend appellants, Jimmie W. Huffhines and Judith Ann Huffhines, against an original third-party petition filed in an underlying lawsuit when, in that original petition, the plaintiffs alleged appellants knowingly failed to disclose defects in a townhouse they sold to the plaintiffs. Because we conclude State Farm had no duty to defend appellants against this original third party petition, we affirm the trial court’s judgment.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 Appellants sold their townhouse to George and Sharon Heaton in March 1998. Up to the time of sale, State Farm insured the townhouse under a Homeowners Policy. State Farm also insured appellants’ subsequent residence and insured appellants under an Umbrella Policy.
 

 The owner of the townhouse adjoining the Heatons’, Mary L. Piper, initiated the underlying lawsuit against the Heatons alleging that various defects in the Heatons’ property caused water to encroach on and damage her residence. As pail of her factual allegations, Piper asserted the Hea-tons “failed to properly repair and maintain the common wall, patio, drainage system, and adjoining land in general in such a fashion so as to prevent water from intruding into [Piper’s] townhome.” In a claim of negligence, Piper alleged the Hea-tons breached their duty to Piper to maintain and repair their property in a reasonably prudent manner in order to avoid water intruding onto Piper’s adjacent premises.
 

 The Heatons then sued appellants. In their Original Third Party Petition, the Heatons alleged the following facts:
 

 George Heaton purchased the Property from the Huffhines [sic] in March of 1998. In the course of this litigation, the Heatons received a copy of a letter and an engineering report sent to the Huffhines[sie] before they sold the Property to the Heatons, detailing various alleged defects of the Property and/or the common wall with Mrs. Piper related to water encroachment from the Property to Mrs. Piper’s residence. In connection with the purchase of the Property, the Huffhines [sic] made certain disclosures to the Heatons regarding the Property in a document entitled Seller’s Disclosure of Property Condition. In this Disclosure, the Huffhines [sic] assured the Heatons that, they were unaware of anything on the Property in need of repair, water penetration (other than a roof leak), improper drainage, or defects of the interior walls, exterior walls, roof, walls, fences, or plumbing. In summary, the Huffhines [sic] were on notice of the alleged prob
 
 *496
 
 lems made the basis of this suit, and failed to disclose same to the Heatons.
 

 The Heatons’ petition alleged common law fraud, statutory fraud, violation of the Deceptive Trade Practices Act (DTPA), and negligence, and sought contribution, damages, and attorney’s fees. In the negligence paragraph, the Heatons pleaded, “In the alternative, Third-Party Defendants’ misconduct as described above, constituted negligence which was the proximate cause of the Heatons’ damages, for which they sue herein.”
 

 Appellants, in turn, sued State Farm, seeking a declaratory judgment that State Farm owed them a duty to defend in the underlying suit and to pay any adverse judgment rendered against them. The Heatons subsequently amended their petition, modifying the factual allegation set forth above to read:
 

 George Heaton purchased the Property from the Huffhines [sic] in March of 1998. Plaintiff is alleging that water began entering her home prior to the Heatons [sic] purchase of the Property in 1998. Moreover, in the course of this litigation, the Heatons received a copy of a letter and an engineering report sent to the Huffhines [sic] before they sold the Property to the Heatons, detailing various alleged defects of the Property and/or the common wall with Mrs. Piper related to water encroachment from the Property to Mrs. Piper’s residence. However, the Huffhines [sic] failed to adequately repair and remediate the various alleged defects. The Huffhines [sic] also failed to advise the Heatons of the alleged defects and complaints of Mrs. Piper.
 

 In this amended petition, the Heatons set forth negligence as their first cause of action. The Heatons alleged appellants (1) failed to effectively repair the water problems and (2) negligently failed to disclose the alleged defects of the property. The Heatons again alleged common law fraud, statutory fraud, and DTPA violations, and sought contribution, damages, and attorney’s fees. State Farm agreed to defend against this amended petition.
 

 After both sides moved for summary judgment, the trial court granted State Farm’s motion, denied appellants’ motion, and rendered judgment declaring State Farm had no duty to defend appellants against the allegations in the Heatons’ Original Third Party Petition or to indemnify appellants against a judgment based on those allegations.
 

 II. DISCUSSION
 

 In a single issue, appellants challenge the trial court’s declaratory judgment that State Farm had no duty to defend appellants against Defendants’ (Heatons’) Original Third Party Petition in the underlying lawsuit. Whether an insurance carrier owes a duty to defend under an insurance policy is a question of law, which we review de novo.
 
 State Farm Gen. Ins. Co. v. White,
 
 955 S.W.2d 474, 475 (Tex.App.—Austin 1997, no pet.). Additionally’, de novo review is appropriately applied to the trial court’s declaratory judgment in this case because the trial court resolved the case on competing motions for summary judgment in the face of undisputed facts.
 
 See Guthery v. Taylor,
 
 112 S.W.3d 715, 720 (Tex.App.—Houston [14th Dist.] 2003, no pet.) (regarding standards applied to declaratory judgments);
 
 Taub v. Aguila Southwest Pipeline Corp.,
 
 93 S.W.3d 451, 462 (Tex.App.—Houston [14th Dist.] 2002, no pet.) (regarding de novo review in summary judgment context).
 

 A.' Legal Principles Applicable
 
 [1]
 
 to Determining the Duty to Defend
 

 A liability insurer is obligated to defend a suit if the facts alleged in the
 
 *497
 
 pleadings would give rise to any claim within the coverage of the policy.
 
 Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,
 
 141 S.W.3d 198, 201 (Tex.2004). If, however, a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.
 
 Nat’l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,
 
 939 S.W.2d 139, 141 (Tex.1997) (per curiam).
 

 We determine State Farm’s duty to defend based on the allegations contained in the Heatons’ Original Third Party Petition and the language of appellants’ insurance policies.
 
 See id.
 
 Courts refer to this standard for determining coverage from the four corners of the pleading and the four corners of the insurance policy as the “eight corners” rule.
 
 Id.
 
 In applying the “eight corners” rule, we give the allegations in the Original Third Party Petition a liberal interpretation.
 
 See id.
 
 Thus, in construing the allegations of the underlying suit, we strictly construe the pleadings against the insurer, and resolve any doubt in favor of coverage.
 
 See Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,
 
 387 S.W.2d 22, 26 (Tex.1965).
 

 If the Heatons’ Original Third Party Petition does not state facts sufficient to bring the case clearly within or outside appellants’ coverage, State Farm is obligated to defend if
 
 potentially
 
 there is a case under the complaint within the coverage of appellant’s policy.
 
 See Merchs. Fast Motor Lines, Inc.,
 
 939 S.W.2d at 141. In making this determination, we must focus on the petition’s factual allegations showing the origin of the damages rather than on the legal theories alleged.
 
 Id.
 
 We will not read facts into the petition, nor will we look outside of the petition, or imagine factual scenarios which might trigger coverage.
 
 Id.
 
 at 142. In the context of this case, if State Farm has a duty to defend against any claim pleaded in the Original Third Party Petition, it is required to defend against all claims in that petition.
 
 See Stumph v. Dallas Fire Ins. Co.,
 
 34 S.W.3d 722, 728 (Tex.App.—Austin 2000, no pet.).
 

 B. Analysis
 

 1. The Petition and the Policy
 

 In their Original Third Party Petition, the Heatons alleged that, at the time appellants sold their townhouse to the Heatons, appellants knew of various defects of their townhouse and its common wall with Piper’s property, including water encroachment. The Heatons also alleged appellants assured them they were unaware of (1) anything in need of repair, (2) water penetration other than a roof leak, (3) improper drainage, or (4) defects of the interior walls, exterior walls, roof, walls, fences, or plumbing. As summarized by the Heatons: Appellants “were on notice of the alleged problems made the basis of this suit, and failed to disclose same to the Heatons.”
 

 Appellants’ Homeowner’s Policy states that State Farm will provide a defense “[i]f a claim is made or a suit is brought against an
 
 insured
 
 for damages because of
 
 bodily injury
 
 or
 
 property damage
 
 caused by an
 
 occurrence
 
 to which this coverage applies.” An occurrence is defined as “an accident, including exposure to conditions, which results in
 
 bodily injury
 
 or
 
 property damage
 
 during the policy period.” i
 

 Appellants’ Umbrella Policy provides State Farm will “defend the suit against”
 
 *498
 
 the insured “[wjhen the claim or suit is covered by this policy, but not covered by any other policy available to [the insured].” State Farm’s “obligation to defend a claim or suit ends when the amount [State Farm pays] for damages equals [its] limit of liability under Coverage L.” Under the Coverage L provision, “If [the insured is] legally obligated to pay damages for a loss, [State Farm] will pay [the insured’s] net loss minus the retained limit. [State Farm’s] payment will not exceed the amount shown on the Declarations as Policy Limits — Coverage L — Personal Liability.” Loss means “an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions.”
 
 [2]
 

 2. “Accident” under Cowan
 

 In its summary judgment motion, State Farm argued both “occurrence” in the Homeowners Policy and “loss” in the Umbrella Policy required an “accident,” and argued the Heatons had not alleged an accident in their Original Third Party Petition. Neither policy defines “accident.”
 

 In
 
 Trinity Universal Insurance Co. v. Cowan,
 
 the supreme court explained the meaning of the term “accident” as found in the standard homeowner’s insurance policy. 945 S.W.2d 819, 826-28 (Tex.1997). In
 
 Cowan,
 
 the insured, a photo lab clerk, made extra prints of revealing photographs of the plaintiff (Cowan) which she had submitted for developing.
 
 Id.
 
 at 820. He then showed the prints to his friends and left them with one friend with instructions to throw them away. The friend, however, showed them to someone else, who then told the plaintiff.
 
 See id.
 
 at 820-21. The supreme court decided the insured’s intentional tort that resulted in unintended injuries was not an “accident,” and thus not an “occurrence.”
 
 Id.
 
 at 820. Therefore there was no coverage under the policy.
 
 Id.
 

 In reaching this conclusion, the court noted the rule that whether an event is accidental “is determined from the viewpoint of the insured.”
 
 Id.
 
 at 827. Nevertheless, more significant for the case before the court was the rule that “whether an event is accident is determined by its effect.”
 
 Id.
 
 The court then reiterated its earlier holding that “an effect that
 
 ‘cannot
 
 be reasonably anticipated from the use of [the means that produced it], an effect which the actor did not intend to produce and winch
 
 he cannot be charged with the design of producing,
 
 is produced by accidental means.’ ”
 
 Id.
 
 at 827 (quoting
 
 Republic Nat’l Life Ins. Co. v. Heyward,
 
 536 S.W.2d, 549, 555 (Tex.1976), in turn citing
 
 Int’l Travelers’ Ass’n v. Francis,
 
 119 Tex. 1, 23 S.W.2d 282, 284-85 (1930)). Regarding the specific conduct of the photo lab clerk (Gage), the court explained:
 

 [W]e conclude that Gage’s conduct was not an “accident.” He did exactly what he intended to do when he purposefully copied the photographs and showed them to his friends. That Gage did not expect or intend Cowan to learn of his actions is of no consequence to our determination of whether his actions were an “accident.” Nor did Gage negligently iniade Cowan’s privacy; he intentionally made the copies of her photographs and showed them to his friends. We conclude, therefore, that there was no
 
 *499
 
 coverage under the policy for damages caused as a result of Gage's invasion of Cowan’s privacy.
 

 ... Rather, Gage’s conduct was not an “accident” because the injury to Co-wan, the invasion of her privacy, is of a type that “ordinarily followfs]” from Gage’s conduct and the injuries could be “reasonably anticipated from the use of the means, or an effect” that Gage can “be charged with ... producing.” To hold otherwise would inappropriately enhance rather than minimize the moral hazard inherent in insurance.
 

 Id.
 
 at 827-28, 23 S.W.2d 282 (citations omitted).
 

 In the present case, the event or conduct alleged by the Heatons in their Original Third Party Petition is appellants’ assuring the Heatons they were not aware of defects of their townhouse when appellants had knowledge of such defects, including water encroachment.3 Water damage is of a type that “ordinarily follow[s]” from existing and undisclosed water encroachment; and the injuries to Piper, who occupied the adjoining townhouse, could be “reasonably anticipated from the use of the means, or an effect” appellants can “be charged with ... producing.”
 
 See id.
 
 at 828, 23 S.W.2d 282.
 

 The allegations in Heatons’ Original Third Party Petition, did not set forth an “accident” as defined by
 
 Cowan.
 
 Absent an “accident” there can be no “occurrence” under appellants’ homeowners policy and no “loss” under their umbrella policy. Thus, the Heatons did not allege facts within the scope of appellants’ insurance policies, and State Farm was not required to defend appellants against Heatons’ Original Third Party Petition.
 
 See Merchs. Fast Motor Lines, Inc.,
 
 939 S.W.2d at 141.
 

 3. Appellants’ “Negligence” Claim
 

 However, in an attempt to avoid the implications of
 
 Cowan,
 
 appellants urge three arguments. First, they contend that because the Heatons are seeking contribution under Texas Civil Practices and Remedies Code chapters 32 and 33, Piper’s allegation of the Heatons’ negligence triggers coverage under the policies. Second, appellants argue the Heatons in fact alleged a negligence claim in them Original Third Party Petition. Third, appellants assert that the intentional nature of appellants’ alleged conduct
 
 (i.e.,
 
 the knowing misrepresentation) does not determine the absence of an “accident.”
 

 Heatons’ claim for contribution.
 
 Appellants perfunctorily reference chapters 32 and 33 and quote the definition of “responsible third parties,” in Texas Civil Practice and Remedies Code section 33.011(6).
 
 See
 
 Act of May 8, 1995, 74th Leg. R.S., ch 136, § 1, sec. 33.011(6), 1995 Tex. Gen Laws 971, 973 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(6) (Vernon Supp.2004-05)).4 Appellants, however, do not explain how the Heatons’ request for contribution or indemnification warrants reference to Piper’s claims to determine whether State Farm is obligated to defend Heatons’ suit against appellants.
 

 Appellants do argue their case is analogous to
 
 Gibson & Associates v. Home Insurance Co.,
 
 966 F.Supp. 468 (N.D.Tex.1997).
 
 Gibson,
 
 however, is inapposite.
 

 Gibson
 
 concerned a coverage dispute involving a commercial general liability policy.
 
 See id.
 
 at 470. Gibson, the insured, had contracted with the City of Dallas to perform construction work along Main Street. Shop owners subsequently sued the City claiming, among other things, (1) the City had failed adequately to access the scope of necessary construction, in particular the total closing of Main Street for
 
 *500
 
 a period of time, and (2) the City’s restriction of access to the owners’ properties during the construction was "'illegal, unnecessary, negligently performed and/or unduly delayed.’ ”
 
 Id.
 
 at 471. The
 
 City,
 
 in turn, sued Gibson, alleging Gibson had agreed to indemnify the city from claims arising from a breach of any term of the contract and Gibson had breached its contractual duties because the construction contract required Gibson to insure continued access to businesses along Main Street during business hours.
 
 Id.
 
 Attached to the City’s pleading against Gibson was a copy of the shop owners’ underlying pleading.
 
 Id.
 
 After Gibson’s insurer declined to defend Gibson, Gibson sued its insurer, Home Insurance Company, alleging that, in refusing to provide Gibson with a defense, Home failed to deal fairly and in good faith.
 
 Id.
 

 The district court first considered whether Home had a duty to defend Gibson against the City’s breach of contract claims. The court concluded (1) any damages sought by the City as a direct consequence of Gibson’s breach of its construction contract could not be characterized as “property damage,” and (2) a breach of contract did not represent an “occurrence” as defined by commercial general liability policies.
 
 Id.
 
 at 473-74. Therefore, the City’s breach of contract claims did not give rise to a duty to defend.
 
 Id.
 
 at 475. In the course of reaching its conclusion regarding property damage, the court specifically rejected Gibson’s invitation to consider the shop owners’ claims:
 

 Significantly, in determining the nature of damages for which recovery is sought from Gibson, the Court must look not, as Gibson insists, to the claims brought by the Shop Owners against the City of Dallas, but rather to the facts asserted in the City’s own third-party actions against Gibson. In other words, it is the factual background alleged in the third-party complaints that provides the pertinent frame of reference with regard to the issue of coverage.
 
 It is true, as Gibson correctly points out, that the City’s complaints incorporate the Shop Owners’ pleading by reference. Yet, the mere fact of incorporation neither demonstrates that the City has thereby adopted the Shop Owners’ causes of action as part and parcel of its own claims against Gibson, nor does it indicate that the City is seeking recovery on a theory of negligence for injuries sustained directly by the Shop Owners. Quite to the contrary, the only damages claimed by the City derive
 
 from
 
 its potential liability to the Shop Owners as a result of Gibson’s alleged breach of the construction contract.
 

 Id
 
 at 473 (emphasis added).
 

 The district court did conclude Home was required to defend Gibson based on the City’s cause of action for indemnification.
 
 Id.
 
 at 476. This duty, however, arose not, as appellants urge in the present case, from a general allegation of contribution or indemnification in the City’s pleadings. Instead, the duty arose from an indemnification agreement in the contract between Gibson and the City and specific' provisions in Gibson’s commercial general liability insurance contract.
 
 See id.
 
 at 476-77. The policy in question excluded coverage for bodily injury or property damage for which the insured was obligated to pay damages because of an assumption of liability in a contract or agreement, but exempted from this exclusion liability assumed in a contract or agreement that was an “insured contract.”
 
 Id.
 
 at 476. The contract between Gibson and the City was an “insured contract.” See id.' at 479. In determining whether there was policy coverage for the City’s claim for indemnification of its liability to the shop owners, the district court neces
 
 *501
 
 sarily looked at the nature of the shop owners’ claims.
 
 See id.
 
 at 478-79.
 

 Appellants point to no provision in their homeowners or umbrella policies comparable to the provision giving rise to the duty to defend in
 
 Gibson.
 
 In the only portion of the
 
 Gibson
 
 opinion even arguably in-stractive for the present case (analysis of the City’s breach of contract claims), the
 
 Gibson
 
 court declined to consider the initial plaintiffs’ claims against the party subsequently suing the insured. We conclude the Heatons’ claim for contribution does not give rise to a duty to defend on the part of State Farm.
 

 Heatons’ “negligence” claim.
 
 Appellants also contend State Farm had a duty to defend because the Heatons alleged a “negligence claim” in their Original Third Party Petition. As an initial matter, in making this assertion, appellants seem to overlook the rule that, in determining an insurer’s duly to defend, court must focus on the factual allegations showing the origin of the damages rather than on the legal theories alleged.
 
 See Merchs. Fast Motor Lines, Inc.,
 
 939 S.W.2d at 141.
 

 Second, viewed in the context of the entire Original Third Party Petition, the bare allegation of “negligence” is not controlling. In their Original Third Party Petition, the Heatons alleged appellants were aware of defects in their property and the common wall related to water encroachment but assured the Heatons they were unaware of any water penetration or anything needing repair. The Heatons next asserted claims for common law fraud, statutory fraud, and engaging in false, misleading, or deceptive acts in violation of the DTPA. Finally, the Heatons set forth the following allegation of negligence: “In the alternative, Third Party Defendants’ misconduct as described above, constituted negligence which was a proximate cause of the Heatons’ damages, for which they sue herein.”
 

 A mere characterization of negligence, alternatively made, is insufficient to convert claims based on knowing misrepresentation into a claim for recovery of property damage caused by an accident within the meaning of the insurance policies.
 
 See Freedman v. Cigna Ins. Co. of Tex.,
 
 976 S.W.2d 776, 779 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (stating, even though plaintiffs in underlying case alleged negligence as an alternative claim the mere allegation of negligence does not control duty to defend);
 
 see also Jim Johnson Homes, Inc. v. Mid-Continent Cas. Co.,
 
 244 F.Supp.2d 706, 716 (N.D.Tex.2003) (stating no reading of any Texas decision would reasonably lead to conclusion that mere characterization, alternatively made, that contractor’s failure to perform building contract properly was negligent is sufficient to convert claims based on breach of express and implied covenants and warranties into claim for recovery of property damages caused by accident within meaning of liability insurance policy). The negligence claim in the Heatons’ Original Third Party Petition is at best a bare-bones allegation of negligence, insufficient to trigger State Farm’s duty to defend.
 
 See Tealwood Constr., Inc. v. Scottsdale Ins. Co.,
 
 No. Civ.A.3:02-CV-2159-L, 2003 WL 22790856 at *5 (N.D.Tex. Nov.19, 2003).
 

 The intentional nature of appellants’ injury-causing conduct.
 
 Finally, citing
 
 Cowan,
 
 appellants observe the supreme court “has rejected the notion that if an actor intended to engage in the injury-causing conduct, there can be no ‘accident.’”
 
 See Cowan,
 
 945 S.W.2d at 828 (rejecting insurer’s argument there can be no accident if actor intended to engage in conduct giving rise to injury). Appellants then cite a series of Texas cases they claim
 
 *502
 
 support their position:
 
 Gehan Homes, Ltd. v. Employers Mutual Casualty Co.,
 
 146 S.W.3d 833 (Tex.App.—Dallas, pet.filed);
 
 Hallman v. Allstate Insurance Co.,
 
 114 S.W.3d 656 (Tex.App.—Dallas, 2003),
 
 rev’d,
 
 159 S.W.3d 640, 48 Tex. Sup.Ct. J. 474, 2005 WL 563110 (Tex. Mar. 11, 2005);
 
 Acceptance Insurance Co. v. Lifecare Corp.,
 
 89 S.W.3d 773 (Tex.App.—Corpus Christi 2002, no pet.);
 
 Westchester Fire Insurance Co. v. Gulf Coast Rod, Reel & Gun Club,
 
 64 S.W.3d 609 (Tex.App.—Houston [1st Dist.] 2001, no pet.); and
 
 Stumph v. Dallas Fire Insurance Co.,
 
 34 S.W.3d 722 (Tex.App.—Austin 2000, no pet.).5
 

 In
 
 Gehan,
 
 the appellate court characterized the plaintiffs in the underlying case as having alleged, in part, that the insured home builder, “was negligent in relying upon the developers’ general soil analysis and in failing to obtain an accurate soil analysis upon which to base a foundation design.”
 
 Gehan,
 
 146 S.W.3d at 837. The
 
 Gehan
 
 court specifically distinguished
 
 Jim Johnson Homes
 
 on the ground the allegations of negligence in the case before the court were “more than simply bare-bones allegations.”
 
 Id.
 
 at 842. In contrast, as discussed above, the “negligence” claim in the Heatons’ Original Third Party Petition is just that, a bare-bones allegation.
 

 In
 
 Lifecare Corp.,
 
 the plaintiff in the underlying case, a sexual assault victim, sued the insured, her attacker’s former employer, alleging the employer negligently provided inaccurate information in a request from the attacker’s subsequent employer.
 
 Lifecare Corp.,
 
 89 S.W.3d at 776. The appellate court observed, “The insured and its agents’ or employees’ conduct said to have caused the injuries were purely and simply negligence. The specific and
 
 only
 
 facts alleged against [the insured] were the negligent representations.”
 
 Id.
 
 at 778. The court also appears to have concluded the sexual assault was not expected or intended from the insured’s standpoint.
 
 Id.
 
 at 784. Thus, unlike the present case,
 
 Lifecare
 
 involved neither! allegations of intentional misrepresentation nor damage that might reasonably have been expected.
 

 In
 
 Stumph,
 
 the plaintiff in the underlying case, a garage owner, sued the insured concrete contractor for damages caused when cement and sediment fell onto vehicles.
 
 Stumph,
 
 34 S.W.3d at 729. As the Austin court subsequently explained, “The petition in
 
 Stumph
 
 contained facts alleging that the damages resulted from certain events and were not the natural and probable consequences of repairing a garage.”
 
 Devoe v. Great Am. Ins.,
 
 50 S.W.3d 567, 571 (Tex.App.—Austin 2001, no pet.).
 

 As appellants acknowledge, in
 
 Gulf Coast Rod, Reel & Gun Club
 
 and
 
 Hallman,
 
 the appellate courts also concluded the damage at issue was not the intended or expected result of the alleged conduct by the insured.
 
 See Gulf Coast Rod, Reel & Gun Club,
 
 64 S.W.3d at 613 (concluding sand erosion neither expected nor intended);
 
 Hallman,
 
 114 S.W.3d at 661 (concluding underlying plaintiff alleged insured negligently leased her property but did
 
 not
 
 allege damages to neighboring landowners from mining operations on property were inevitable and predictable),
 
 rev’d on other grounds,
 
 159 S.W.3d 640, 48 Tex. Sup.Ct. J. at 477, 2005 WL 563110 at *5. In contrast, one could reasonably anticipate water damage would result when one fails to disclose known water encroachment, but instead assures the buyer there is no problem.
 
 See Cowan,
 
 945 S.W.2d at 828.
 

 In sum, in terms of the intentional nature of the insured’s alleged conduct or the extent to which the ensuing damage could be anticipated, the cases on which appellants rely are distinguishable and do not provide persuasive authority for deciding the present case.
 

 
 *503
 
 Under
 
 Cowan,
 
 it is the effect of intentional conduct that determines whether an event is an accident.
 
 Cowan,
 
 945 S.W.2d at 827. As discussed above, the effect in the present case, water damage, is damage of a type that “ordinarily follow[s]” when one knows of, but intentionally does not disclose, existing water encroachment.
 
 See id.
 
 at 828. In determining State Farm had no duty to defend, we have looked not to the allegation of appellants’ intentional conduct, but to the effect of that conduct as
 
 Cowan
 
 requires.
 

 III. CONCLUSION
 

 Based on the allegations of the Original Third Party Petition and the applicable provisions of appellants’ policies, we conclude State Farm did not have a duty to defend appellants’ against that petition. Accordingly, we overrule appellants’ sole issue and affirm the judgment of the trial court.
 

 [1]
 

 . Under the Homeowners Policy, "
 
 ‘Bodily Injury'
 
 means bodily harm, sickness or disease,” including " required care, loss of services and death that results,” and "
 
 'Property Damage'
 
 means injury to, destruction of, or loss of use of property.” State Farm does not contend the Heatons failed to allege claims involving bodily injury or property damage.
 

 [2]
 

 .
 
 Under the Umbrella Policy, "
 
 ‘personal injury’
 
 means.. .bodily harm, sickness, disease, shock, mental anguish or mental injury” including "required care, loss of services and death resulting therefrom,” and "
 
 ‘property damage'
 
 means physical injury to or destruction of tangible property,” including "the loss of use caused by the injury or destruction.” As stated in note one above, State Farm does not contend the Heatons failed to allege claims involving bodily injury or property damage.