IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00168-CR

 

Michael Wayne Bell,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 0500753-CRF-85

 



O p i n i o n



 

            Appellant Michael Wayne Bell appeals
his conviction for aggravated assault of a public servant.  The jury assessed a
twenty-five year prison sentence.  We will affirm.

Background

            After being detained by Jillian Garza,
a Bryan police officer, Bell resisted being handcuffed, scuffled with Garza and
other officers, and was able to get one of the officers’ handguns.  He pointed
the gun at Officer Garza, telling her to back off or he would shoot her.  For
the safety of residents who were coming outside, the officers let Bell run away.  He was apprehended about five months later.

Sufficiency of the Evidence on Lawfully Discharging
an Official Duty

            Bell’s first two issues assert that
the evidence is legally and factually insufficient to support the jury’s guilty
finding.[1] 
Aggravated assault is elevated to a first-degree felony when committed against
a person the actor knows to be a public servant while the public servant is
lawfully discharging an official duty.  See Tex. Pen. Code Ann. § 22.02(b)(2)(B) (Vernon Supp. 2006).  Bell’s argument is that Garza’s initial detention of him was illegal (i.e.,
unconstitutional) and that the evidence is therefore legally and factually insufficient
to support the lawfully-discharging-an-official-duty element.

            In the context of the offense of
aggravated assault of a public servant, the “lawful discharge” of official
duties means that the public servant is not criminally or tortiously abusing
his or her office as a public servant by acts of, for example, official
oppression or violations of the civil rights of a person in custody, or the use
of unlawful, unjustified force.  Hall v. State, 158 S.W.3d 470, 474-75 (Tex. Crim. App. 2005); see Hughes v. State, 897 S.W.2d 285, 298 (Tex. Crim. App. 1994)
(holding that whether officer’s traffic stop was constitutionally reasonable is
not relevant to determining if officer was acting in the lawful discharge of
his duties); Montoya v. State, 744 S.W.2d 15, 29 (Tex. Crim. App. 1987)
(holding that a lawful arrest was not required to demonstrate that officer was
acting within lawful discharge of official duties), overruled on other
grounds by Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  As
long as a peace officer was acting within her capacity as a peace officer, she
was acting within the lawful discharge of her official duties.  Hall,
158 S.W.3d at 474.  Courts look at the details of the encounter, such as
whether the police officer was in uniform, on duty, and whether she was on
regular patrol at the time of the assault.  Id.

In this case, around 1:00 a.m., Garza responded to
an anonymous tip that a black male wearing a navy blue shirt and black pants
was selling drugs at an intersection in a well known drug area.  About four to
five blocks from the intersection, Garza encountered Bell and another man as
they were walking down the street.  Garza said that Bell matched the
description of the person in the tip.  When she told them that she needed to do
a check for weapons, on their own they both put their hands on the hood of her
patrol car.  She also called for back-up.  Two officers arrived within a
minute.  When it became obvious that Bell was giving incorrect information
about his identity, one of the officers told Bell that they were going to
detain him until they ascertained his real name.  When the officer tried to
handcuff Bell, the scuffle broke out and he got one of the officers’ guns.

There was testimony that all three officers were
wearing their Bryan police department uniforms that clearly displayed their
badges and that they were in clearly marked Bryan police department patrol
cars.  Garza said that she had stopped and then detained Bell because she was
conducting a narcotics investigation.

Viewing the evidence in the light most favorable
to the verdict, we find that a rational trier of fact could have found beyond a
reasonable doubt that Garza was lawfully discharging an official duty.  See
Jackson, 443 U.S. at 318-319, 99 S.Ct. at 2788-89.  Issue one (legal
insufficiency) is overruled.  And considering all of the evidence in a neutral
light, we find that the jury was justified in finding Bell guilty.  See Watson,
204 S.W.3d at 415.  Issue two (factual insufficiency) is overruled.

Fruit of the Poisonous Tree

            In his third issue, Bell asserts that
the trial court erred in denying his motion to suppress.  Bell asserts that
Garza’s initial stop and search was a mere encounter, rather than a Terry
stop, because Garza did not have reasonable suspicion to temporarily detain him
based on the anonymous tip.  See Florida v. J.L., 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000) (holding that anonymous tip alone will
rarely establish level of suspicion required to justify detention and that there
must be some further indicia of reliability or some additional facts from which
officer may reasonably conclude that tip is reliable and detention is
justified).  Thus, he claims that the evidence of all the events that occurred
after the illegal detention should have been suppressed as “fruits of the
poisonous tree.”  See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (holding that evidence derived from an
illegal act cannot be used at trial); see also Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005) (“No
evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case.”).  We assume without deciding that
Garza’s initial detention of Bell was unconstitutional.

Under the “fruit of the poisonous tree” doctrine,
all evidence derived from the exploitation of an illegal detention, search, or seizure
must be suppressed, unless the State shows that there was a break in the chain
of events sufficient to refute the inference that the evidence was a product of
the Fourth Amendment violation.  Wolf v. State, 137 S.W.3d 797, 805 (Tex. App.—Waco 2004, no pet.) (citing United States v. Portillo-Aguirre, 311 F.3d
647, 650 (5th Cir. 2002)).  Evidence can become so attenuated from the illegal
detention to dissipate the taint of the prior illegality.  See St.
George v. State, 197 S.W.3d 806, 824 (Tex. App.—Fort Worth 2006, pet.
granted) (en banc) (“both the federal and state exclusionary rules allow the
admission of otherwise tainted evidence if the connection between the initial
illegality and the discovery of the challenged evidence has become so
attenuated as to dissipate the taint of the prior illegality”) (citing Wong Sun,
371 U.S. at 487, 83 S.Ct. at 417; and Johnson v. State, 871 S.W.2d 744,
750 (Tex. Crim. App. 1994)).

Typically, evidence such as seized illegal
narcotics is what is sought to be excluded by a suppression motion.  See,
e.g., St. George, 197 S.W.3d at 824-25.  But Bell is asserting that all the
evidence relating to his commission of the subsequent offense of aggravated
assault of a public servant during his illegal detention is fruit of the
poisonous tree.  He cites no authority for that proposition, nor do we find any
supporting his theory.

In State v. Mayorga, 901 S.W.2d 943 (Tex. Crim.
App. 1995) (plurality op.), the accused resisted what turned out to be a
wrongful arrest, yet she was charged with resisting arrest.  She moved to
suppress all of the evidence, including testimony of the officers, of the
wrongful arrest, and the trial court granted her motion.  Id. at 944-45. 
Reversing the trial court, the plurality recognized that article 38.23 deals
with exclusion of illegally obtained evidence of a prior crime; it does not
provide any protection to commit a new crime and then to exclude any evidence
of that new crime because the police initially acted illegally.  Id. at 945-46; see Donoho v. State, 39 S.W.3d 324, 327 (Tex. App.—Fort Worth 2001, pet. ref’d)
(holding that because appellant committed the aggravated assault after his
warrantless arrest, evidence of the assault was not obtained in “violation of
the law”); Cooper v. State, 956
S.W.2d 95, 97-98 (Tex. App.—Tyler 1997, pet. ref’d) (holding that alleged
illegality of defendant’s arrest could not serve, under article 38.23, as a
means to exclude evidence of his subsequent aggravated assault on the arresting
officers; “[t]he evidence of the aggravated assault was not ‘obtained in
violation of the law’“).

The plurality opinion’s analysis in Mayorga
was adopted in Martinez v. State, 91 S.W.3d 331, 340 & n.35 (Tex.
Crim. App. 2002).  There the question and answer were:  “Is a person who
allegedly commits perjury in making a statement to the grand jury entitled to
suppress that sworn statement because he was not fully advised of his rights to
remain silent and make no statement at all?  No.  A person does not have a
license to lie because the constable failed to inform him of his right to
remain silent.”  Id. at 337.  In its discussion, the Court of Criminal
Appeals noted:

Appellee’s argument, carried to its extreme
logical conclusion, would provide legal protection to the murderer of a police
officer, who proves that the officer detained him without articulable suspicion
prior to the murder.  Under appellee’s theory, evidence of that killing would
have to be suppressed under article 38.23 because the murder occurred after and
because of the officer’s initial “illegal” conduct.  That theory is not the
law.

 

Id. at
340.  The trial court did not err in denying Bell’s motion to suppress, and we
overrule his third issue.

Jury Selection

 

            Bell’s fourth issue asserts that the
trial court erred in denying a challenge for cause of a prospective juror who
allegedly expressed a bias against Bell.[2]  A
challenge for cause is “an objection made to a particular juror, alleging some
fact which renders the juror incapable or unfit to serve on the jury.”  Tex. Code Crim. Proc. Ann. art.
35.16(a) (Vernon 2006).[3]  A
challenge for cause may be made on the ground that a prospective juror is
biased or prejudiced for or against the defendant.  Id. art.
35.16(a)(9).  “Bias” means an inclination toward one side of an issue rather
than to the other leading to the natural inference that the juror will not act
with impartiality.  Anderson v. State, 633 S.W.2d 851, 853 (Tex.
Crim. App. [Panel Op.] 1982).  “Prejudice” means prejudging.  Id.

During jury selection, prospective juror Sielken
advised that her uncle was a police officer.  The following colloquy occurred
between her and Bell’s attorney:

[ATTORNEY]:          Uh-huh.  But anything about
that experience says, “Okay.  Maybe I’m not the one to sit on this jury”?

JUROR SIELKIN:     Maybe not.  I don’t know.  I
would hope I wasn’t; but, you know, he was a -- it would be different if it was
my uncle, if he was the person that --

[ATTORNEY]:          And unfortunately the
question I’ve got to ask is we’ve got to know that about you now because if you
make that decision after you’re already put into the jury box, somebody is not
going to be getting a fair trial and . . .

JUROR SIELKIN:     Then I’m the one that would be --
you know, prevent him from having a fair trial.

[ATTORNEY]:          So you wouldn’t think that
you could . . .

JUROR SIELKIN:     I don’t know.  Just . . .

 

Later,
Sielken was further questioned in individual voir dire:

 

[ATTORNEY]:          . . .  Do you think you would
have some reservations in giving Mr. Bell a fair trial because of the type of
charge?

[JUROR SIELKIN]:   Yeah.  I would hate to -- I
would hate to think that I would; but, you know, I do have to -- it’s kind of a
fine tune.  I mean, I always knew my uncle was -- life on the line.

[ATTORNEY]:          Uh-huh.  Would you rather
serve on a different type of case than this?

[JUROR SIELKIN]:   Yes. 

[ATTORNEY]:          And you feel like your
relationship with your uncle could come into play if you were selected as a
juror?

[JUROR SIELKIN]:   Yes.

 

The prosecutor then examined Sielken:

 

[PROSECUTOR]:     And it’ll be your job to judge
the credibility of each.  And so you’re saying that as of right now you’re
going to start the police officers with higher credibility than that of our
civilian witnesses?

 [JUROR SIELKIN]:  I don’t know if I can -- if I’d
say that.

[PROSECUTOR]:     Okay.  So you’re saying, then --
or are you saying, then, that you can listen to both the police officers
testify and the civilians testify, shore up their testimony and their
credibility, and then make a determination after hearing all the facts?

[JUROR SIELKIN]:   Yeah, I think I can do that.

 

Finally, the trial court queried Sielkin:

 

THE COURT:            You would not hold the State
to their burden of proof of beyond a reasonable doubt?

[JUROR SIELKIN]:   No.  I mean, I -- okay.  You’re
trying to say that I would just automatically assume that the State was
correct?  Is that what you’re saying?

THE COURT:            Maybe not automatically
assume, but give them -- give them a head start.

[JUROR SIELKIN]:   No, I don’t think necessarily
along that line.  I think maybe my concern is -- and -- you know, it says it’s
an assault on a police officer.  You know, then that puts you -- okay.

THE COURT:            I don’t think that there’s
anybody in the room that says that that’s a good thing.

[JUROR SIELKIN]:   Right.  I understand.  Right.

THE COURT:            Why don’t you tell me in
your own words what your concerns are about sitting as a juror in this case?  

[JUROR SIELKIN]:   I guess my major concern would
be I may be a little prejudiced against him.  I would hope I would not be; but,
you know, I don’t know the facts.

THE COURT:            But as you sit here right
now, are you?

[JUROR SIELKIN]:   Well, no, not at that point. 
Not under just what information we have been told.

 

The trial court overruled Bell’s challenge for
cause of Sielkin.

If bias or prejudice is not established as a
matter of law, the trial court has discretion to determine whether bias or
prejudice actually exists to such degree that a prospective juror is
disqualified and that the challenge for cause should be sustained.  Little
v. State, 758 S.W.2d 551, 556 (Tex. Crim. App. 1988).  But if the prospective
juror is shown to be biased as a matter of law, she must be excused when
challenged, even if she states that she can set aside her bias and provide a
fair trial.  Tran v. State, 167 S.W.3d 483, 487 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (citing Anderson, 633 S.W.2d at
854).  However, the trial court, in its discretion, initially determines
whether such a bias exists, and the trial court’s decision will be reviewed in
light of all of the answers given.  Id. (citing Anderson, 633
S.W.2d at 854).  We review the voir dire record in its entirety and ask whether
the trial court had a rational basis for its conclusions.  Granados v.
State, 85 S.W.3d 217, 229 (Tex. Crim. App. 2002).

  “We afford the trial court considerable
deference, because it is in the best position to evaluate a prospective juror’s
demeanor and responses.”  Russeau v. State, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005).  We will thus reverse a trial court’s ruling on a challenge for
cause only for a clear abuse of discretion.  Id.  This is especially
true when the trial court is faced with a vacillating or equivocating prospective
juror.  Banda v. State, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); see
Russeau, 171 S.W.3d at 879; King v. State, 29 S.W.3d 556, 568 (Tex. Crim.
App. 2000) (Particular deference is given when the potential juror’s answers
are vacillating, unclear or contradictory.).  “The trial court is able to
consider important factors such as demeanor and tone of voice that do not come
through when reviewing a cold record.”  Banda, 890 S.W.2d at 54. 

            Reviewing all of Sielkin’s voir dire
answers, we find that the trial court did not abuse its discretion.  She said
she would not start off police officer witnesses with a higher level of
credibility than she would a lay witness, and she said she would listen to all
the evidence before making up her mind on credibility.  See Feldman, 71
S.W.3d 745 (finding that trial court’s denial of challenge for cause of juror
who initially indicated he would lean towards believing an officer over a
layperson, but later said he would have to see both witnesses testify, was not
abuse of discretion).  She affirmed that she would not relieve the State of its
burden of proof, and based on what she knew at that time about the case, she
was not prejudiced against the defendant.

Sielkin was a vacillating, equivocating, and
contradictory prospective juror, but she was not biased as a matter of law. 
Being in the best position to evaluate her answers and Bell’s allegation of
bias, the trial court did not abuse its discretion based on the entire record. 
We overrule Bell’s fourth issue.








Conclusion

Having overruled all of Bell’s issues, we affirm
the trial court’s judgment.

 

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed September 12, 2007

Publish

[CRPM]









[1]               When reviewing a
challenge to the legal sufficiency of the evidence to establish the elements of
a penal offense, we must determine whether, after viewing all the evidence in
the light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In so doing, any inconsistencies in the evidence are resolved
in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review,
we ask whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder’s verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the
evidence weighed by the jury that tends to prove the existence of the elemental
fact in dispute and compares it with the evidence that tends to disprove that
fact.”  Johnson, 23 S.W.3d at 7 (quoting Jones v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996)).  The appellate court “does not indulge
in inferences or confine its view to evidence favoring one side of the case. 
Rather, it looks at all the evidence on both sides and then makes a
predominantly intuitive judgment. . . .”  Id. (quoting William Powers
and Jack Ratliff, Another Look at “No Evidence” and “Insufficient Evidence,”
69 Texas L. Rev. 515, 519 (1991)).  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called “thirteenth juror” to review the
factfinder’s weighing of the evidence and disagree with the factfinder’s
determination.  Watson, 204 S.W.3d at 416-17.

 





[2]               Whether Bell preserved his
complaint for appeal is not in dispute; he did, and the State agrees.  To
preserve such a complaint on a denied challenge for cause, “an appellant must
demonstrate on the record that:  1) he asserted a clear and specific challenge
for cause; 2) he used a peremptory challenge on the complained-of venireperson;
3) all his peremptory challenges were exhausted; 4) his request for additional
strikes was denied; and 5) an objectionable juror sat on the jury.”  Feldman
v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).  When the trial court errs
in overruling a challenge for cause against a venireperson, the defendant is
harmed if he uses a peremptory strike to remove the venireperson and thereafter
suffers a detriment from the loss of the strike.  Id.





 

[3]               Bell asserts that the trial court’s
ruling violated article 35.16, as well as the due process and due course of law
provisions of the U.S. and Texas constitutions.  Because Bell did not assert
his constitutional claims in the trial court (nor has he briefed them), they
have not been preserved for appeal.  Tex.
R. App. P. 33.1(a)(1)(A).